## State of Vermont v. Christopher Bacon

[733 A.2d 50]

No. 98-089

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 14, 1999

*Dan M. Davis*, Windham County State's Attorney, and *James E. Maxwell*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Robert R. Bent* of *Zuccaro, Willis and Bent*, St. Johnsbury, for Defendant-Appellant.

**Johnson, J.** Defendant appeals his sentence for felony murder arguing that: (1) the disparity between defendant's sentence and that imposed on a co-perpetrator violates defendant's right to equal protection of the laws, (2) the victim's standing in the community was

improperly considered by the sentencing judge, and (3) juror testimony was improperly excluded. We affirm.

## I.

Defendant was convicted of felony murder[1] and sentenced to life imprisonment without possibility of parole. Defendant's co-perpetrator, Charles Gundlah, was sentenced by a different judge to sixty years to life with the possibility for parole for his participation in the same crime. See *State v. Gundlah*, 166 Vt. 518, 520, 702 A.2d 52, 53 (1997). Defendant claims that the disparity between these two sentences violates defendant's right to equal protection of the law under the United States Constitution, asserting that the sentencing judge knew of Gundlah's lesser sentence but provided no explanation for the disparity.

Defendant argues that he and his co-perpetrator, Gundlah, are similarly situated with respect to their participation in the same criminal act and that therefore it was irrational to impose different sentences. To the extent that there are any differences between defendant's circumstances and those of his co-perpetrator, Gundlah, defendant argues that they suggest that defendant should have received the lesser of the two sentences.

At trial, defendant maintained that it was Gundlah who actually murdered the victim. Furthermore, defendant argues on appeal that the interrogatories returned by the jury in this case, indicating that it premised its finding of guilt on defendant's "reckless and wanton disregard for human life" rather than an "intent to kill or do great bodily harm," implied that the jury accepted that Gundlah rather than defendant had actually brandished the murder weapon. Thus, defendant argues that he had a lower degree of participation in the crime which was recognized by the jury and that it was unfair to subject him to a lengthier sentence than his co-perpetrator.

The State concedes that defendant and Gundlah were similarly situated for purposes of equal protection analysis, but contends that the rational basis for the disparate sentences is simply the judge's discretion in imposing an individualized sentence that falls within the statutory limits. See 13 V.S.A. § 2303(a).

Federal courts have generally rejected equal protection claims based on disparate sentencing so long as the sentences imposed are

---

[1] A previous conviction was overturned in *State v. Bacon*, 163 Vt. 279, 658 A.2d 54 (1995) (*Bacon I*), on the basis of a faulty instruction to the jury. Defendant was retried with a cured instruction, and the current conviction resulted.

within statutory guidelines. See, e.g., *Williams v. Illinois*, 399 U.S. 235, 243 (1970) ("Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."); *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) ("Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants."); *United States v. Perez*, 904 F.2d 142, 147 (2d Cir. 1990) ("[D]isparities in sentences among co-defendants are generally not reviewable."); *United States v. Di Stefano*, 555 F.2d 1094, 1102 (2d Cir. 1977) (disparity in sentences of co-conspirators generally not reviewable when sentence imposed is within statutory limitations).

The majority of state courts interpreting the federal right to equal protection have reached the same conclusion: that disparate sentences are not reviewable for equal protection violations as long as they fall within statutory limitations. See, e.g., *People v. Bruebaker*, 539 P.2d 1277, 1279 (Colo. 1975) ("Due to the individualized nature of sentencing, there is no rule that confederates in crime must receive equal sentences, nor that failure to impose equal sentences violates equal protection of the law under the Colorado or United States Constitutions."); *State v. Candito*, 493 A.2d 250, 253 (Conn. App. Ct. 1985) ("Co-defendants are not without variance, and need not, in terms of punishment, be treated similarly because they are rarely, if ever, exactly similar."); *State v. Hansen*, 877 P.2d 898, 904 (Idaho 1994) (requirements of equal protection not violated merely because disparate sentences are imposed on co-defendants); *State v. Baker*, 636 A.2d 553, 565 (N.J. Super. Ct. App. Div. 1994) (disparate sentences do not offend equal protection where defendant's sentence was within statutory limitations and there was no evidence of invidious or arbitrary action by the prosecutor or the court).

In determining whether a disparate sentence implicates the equal protection clause, defendant urges the Court to adopt the test applied in *State v. Handley*, 796 P.2d 1266 (Wash. 1990). In that case, the court described two circumstances in which a disparate sentence may violate equal protection: where two defendants similarly situated with respect to their participation in a crime receive different sentences, and there is no rational basis for that difference; and where a defendant is a member of a suspect class and receives disparate

treatment on that basis. See *id.* at 1274-75. Defendant asserts that the facts of the instant case satisfy the first scenario.

In *Handley*, the defendant challenged his sentence because, while his sentence was an exceptional sentence outside of the statutory range, a co-defendant was given a sentence within the statutory range. See *id.* at 1268. In that case, "[t]he actual acts of robbery and murder were committed by persons other than defendant," who was convicted of possession of stolen property, rendering criminal assistance, and conspiracy to commit robbery. *Id.* Nonetheless, the trial court imposed an exceptional sentence because it found the relevant aggravating factors were present, and in particular the court noted that the victim was defendant's employer. See *id.* at 1269. The Washington Supreme Court upheld the sentence in the face of an equal protection challenge, reasoning that "no equal protection claim will stand unless the complaining person can first establish that he or she is similarly situated with other persons." *Id.* at 1274. In *Handley*, the defendant was not present at the scene of the crime, had an employment relationship with the victim, and was not charged with the same crimes as his co-defendants. See *id.* at 1275. Thus, because the co-defendants' roles differed slightly, the defendant could not establish that he was similarly situated. The relevant differences could be interpreted as implying a lower degree of culpability — an argument defendant makes in the instant case as well. Nonetheless, the *nature* of the difference between co-defendants is irrelevant because *any* difference in circumstances defeats an equal protection analysis. The Washington court furthermore emphasized that "culpability is only one factor to be considered" in sentencing. *Id.*

■ The case law makes clear that there is no right to equivalent sentencing of co-defendants under the federal Equal Protection Clause. Defendant would not prevail even under the test he advocates (set forth in the *Handley* opinion), because, like the defendant in that case, he is not similarly situated with his co-perpetrator due to different manners of participation in the crime. Furthermore, even if we were to accept that defendant and his co-perpetrator were similarly situated in terms of their participation in the crime, their individual histories and relative levels of remorse provide a rational basis for the court's sentencing decision.

■ We hold that, because sentencing is an individualized determination, disparate sentences for co-perpetrators do not implicate federal equal protection so long as there is no showing of invidious

discrimination and the sentences imposed are within the statutory limitations.

## II.

Defendant further argues that the trial court erred by considering the victim's standing in the community as an aggravating factor for sentencing purposes. He argues that consideration of this factor led to passion and prejudice in the sentencing, pointing out that defendant was effectively prevented from presenting rebuttal evidence because it would be unseemly for a defendant to suggest that the victim was not in fact valued by the community, was a person of low character, and so on. Defendant contends that the statute setting out the factors to be considered in imposing a sentence limits the court to considering the character of the defendant and the character of the offense. He furthermore cites *In re Morrill*, 129 Vt. 460, 464, 282 A.2d 811, 814-15 (1971), for the proposition that the character of the defendant is the only appropriate basis for a sentence.

The aggravating factors to be considered in sentencing are enumerated in 13 V.S.A. § 2303(d), and include characteristics of the defendant, the nature of the offense, and traits of the victim (i.e., whether the victim was particularly weak, vulnerable, or helpless). The statute itself, therefore, makes clear that the scope of valid considerations is broader than that articulated in *Morrill.*

Nonetheless, assuming without deciding that it was improper for the sentencing judge to consider the victim's standing in the community because it would be practically impossible for a defendant to effectively rebut such evidence, the error in this case was harmless. The sentencing judge considered each of the aggravating and mitigating factors in turn. The court found that all of the aggravating factors were present, except for multiple victims. In asking whether the murder was "particularly severe, brutal or cruel," see 13 V.S.A. § 2303(d)(5), the court noted that defendant participated in the murder by "suppl[ying] the horseshoe stake to Charles Gundlah" and "beat[ing the victim] about the head into a state of semi-consciousness and helplessness." The court found that none of the mitigating factors applied. In particular, the court concluded that defendant was not "an accomplice in the murder committed by another person [where] his participation was relatively minor." The court stated that, "[a]s much as [defendant] would ascribe responsibility for this act to Charles Gundlah," defendant in fact planned the robbery with Gundlah knowing that the victim lived alone and was for that reason vulner-

able, that he never broke away from Gundlah during the perpetration of the crime, and that he assisted in attempting to hide the body and obscure the fact that a crime had occurred. Also, as previously noted, though defendant did not deliver the fatal blow, he assisted in immobilizing the victim so that Gundlah could strangle and stab her. The court found that defendant did not operate under coercion or duress and that he had not credibly taken responsibility for his participation in the murder. The court concluded by stating that "I do not yet believe [defendant has] attained that level of judgment where anyone can trust [him] to be safe in society."

An error is harmless if it does not affect substantial rights of a defendant. See V.R.Cr.P. 52(a). The harmless error doctrine applies to sentencing proceedings. See *State v. Corliss*, 168 Vt. 333, 342, 721 A.2d 438, 445 (1998); *State v. Baril*, 155 Vt. 344, 349-50, 583 A.2d 621, 624 (1990). In this case, defendant did not have any rights adversely affected because the court's analysis of the statutory aggravating and mitigating factors provided an independent basis for the decision to impose a term of life imprisonment. The court properly examined all of the statutory factors and concluded that all but one of the aggravating factors were present while none of the mitigating factors were. Only after concluding that all but one of the aggravating factors were present did the court mention the victim's standing in the community. These considerations provide an independent basis for the sentencing decision; therefore, any error in considering the victim's standing in the community was harmless.

## III.

Finally, defendant argues that his due process rights were violated when he was unable to present evidence on his own behalf because the trial court would not allow a juror to testify as to the basis of the jury's verdict.

Vermont Rule of Evidence 606 provides that a juror may not testify as a witness at trial in a case in which the juror is serving, nor may a juror testify as to any matter or statement occurring during the course of deliberations or as to the effect of anything on the minds or emotions of the jurors, though this does not include a situation where improper extraneous information was presented to the jury.[2] The

---

[2] Defendant points out that juror testimony was received in *State v. Woodard*, 134 Vt. 154, 353 A.2d 321 (1976); however, the Reporter's Notes make clear that Rule 606

State argues that Rule 606 prevents the sentencing judge from allowing juror testimony because it would be virtually impossible to guard against the juror straying into prohibited areas of testimony.

■ We agree that the sentencing judge committed no error, though for a different reason. A sentencing judge has broad discretion over what information may be considered in imposing a sentence. See *State v. Cyr*, 141 Vt. 355, 358, 449 A.2d 926, 927-28 (1982). Here, because sentencing is the province of the court rather than the jury, the court may have concluded that the juror testimony was irrelevant. There was no abuse of discretion.

*Affirmed.*

___

changed the law that existed at the time *Woodard* was decided (i.e., the doctrine that a juror may serve as a witness so long as that juror does not participate in any future deliberations of the jury). See Reporter's Notes, V.R.E. 606.