## State of Vermont v. Robert L. White

[782 A.2d 1187]

No. 00-211

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed August 31, 2001

494

495

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates*, Barre, for Defendant-Appellant.

**Skoglund, J.** Defendant Robert White appeals his conviction for second degree murder following a jury trial in Rutland District Court, and the subsequent imposition of a sentence of life in prison without parole. Defendant claims that the conviction and sentence should be vacated, and the case remanded for a new trial, on the grounds that (1) the evidence presented does not support a finding of defendant's guilt

beyond a reasonable doubt; (2) the failure of the police to photograph and preserve certain evidence required either dismissal of the charge against him or suppression of the evidence in question; (3) the court erred in allowing testimony regarding defendant's marital difficulties and his earlier discharge from employment at the business where the murder took place; and (4) the trial court's imposition of the sentence of life without parole, based upon aggravating circumstances, was unjustified and therefore error. We perceive no error in regard to defendant's arguments, so we affirm the conviction and sentence.

On April 18, 1998, shortly before 11:00 p.m., Jane Desmarais arrived at the Econo Lodge Motel in Rutland to begin her overnight shift as the front desk clerk. Around 1:00 a.m., a couple checked into the motel, where they observed Desmarais speaking with a man in the motel lobby. The man addressed the couple, acting as if he was participating in the check-in process. Defendant had been employed as a night clerk at the motel the previous fall and was familiar with the nighttime check-in procedures and where cash was kept on the premises.

At 2:15 a.m., a long-distance telephone call was made to the front desk of the motel by a person trying to get in touch with one of the motel's customers. When no one answered, the person tried again four or five times within the following half-hour, but was unable to reach anyone at the front desk. At 6:00 a.m., Desmarais' mother telephoned the motel, and when no one answered, went to the motel to check on her daughter. When she arrived, the entrance was locked, but inside all the lights and the television were on. After no one responded to her knocking on the door and a window, she contacted the owner of the motel, Patrick Abatiell, Sr. Abatiell then drove to the motel, unlocked the door, and entered with Desmarais' mother. They discovered Desmarais deceased, her body lying on the floor of the lobby in a location not visible from the front door. Blood spots on the floor and the arrangement of the victim's clothes suggested that the body had been moved to that spot from a more visible location. The body had been disfigured by the application of chemical solvents, including paint remover and commercial drain opener, and appeared to have been burned as well. An autopsy indicated that the cause of death had been asphyxia due to strangulation. There was over $400 in cash missing from the motel office area.

While processing the crime scene, the police took into evidence two advertising flyers, one 8½ by 11 inches in size, and the other 8½ by 5½ inches. The larger flyer had reddish-brown stains on the back,

unprinted side that appeared to be consistent with blood and that resembled a palm print. The smaller flyer had on it what appeared to be a fingerprint made in blood. The flyers were submitted to the state police forensic laboratory for identification of the reddish-brown stains as well as to make an identification of the prints. In the course of processing the larger flyer to identify the palm print, the document was sprayed with ninhydrin, a chemical used to reveal more of the full hand print on the flyer. The ninhydrin treatment revealed latent fingerprints as well. After determining that the reddish-brown substance was indeed blood, a portion of the palm print was cut out by the crime lab in order to preserve it for any future testing which might be necessary. The palm print and fingerprint impressions on both flyers were subsequently identified as matching those of the defendant, and a sample of blood taken from the palm print was identified as that of the victim.

Prior to trial, defendant moved the court to exclude the evidence obtained from the larger flyer, or to dismiss the charges, arguing the physical evidence had been destroyed by the forensic laboratory's cutting of the flyer and chemical treatment. During the trial, defendant filed a motion to exclude the testimony of Patrick Abatiell, Jr., manager of the Econo Lodge, regarding the circumstances surrounding defendant's termination from the motel. Defendant also objected during trial to the introduction of testimony regarding the marital difficulties he was experiencing at the time of the murder. The court denied the motions and the objection, and at the conclusion of the trial the jury entered a verdict of guilty. On April 27, 2000, after the sentencing hearing, the court issued its findings and sentence.

Defendant first argues that the evidence presented was insufficient, as a matter of law, to support a finding of guilt beyond a reasonable doubt. During the trial, defendant moved the court once to dismiss for lack of a prima facie case, twice — at the conclusion of the prosecution's and the defense's case — for acquittal, and once for acquittal notwithstanding the guilty verdict. All of these motions were denied.

We review all of these motions under the same standard — we must determine "whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has produced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State v. Fanger*, 164 Vt. 48, 51, 665 A.2d 36, 37 (1995) (internal quotations and citations omitted); see also V.R.Cr.P. 12(d) (motion to dismiss), 29 (motion for

judgment of acquittal). The evidence presented must be considered together, not separately, *State v. Grega*, 168 Vt. 363, 380, 721 A.2d 445, 457 (1998), and thus even if each piece of circumstantial evidence presented may be explained in some way that does not link the defendant to the murder, this does not mean that an acquittal must be entered. A judgment of acquittal is proper "only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999). Under this standard, we conclude that the court's denial of the motions was proper.

■ Defendant claims that there is no direct evidence that he killed the victim, and that the circumstantial evidence presented does no more than create a suspicion or conjecture that defendant murdered the victim. See *State v. Durenleau*, 163 Vt. 8, 12-13, 652 A.2d 981, 982 (1994) (evidence presented must add up to more than mere speculation) (citing *State v. Robar*, 157 Vt. 387, 391, 601 A.2d 1376, 1378 (1991)); cf. *State v. Miller*, 146 Vt. 164, 169, 502 A.2d 832, 835 (1985) ("Circumstantial evidence will sustain a conviction if it is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt."). We disagree. The State presented circumstantial evidence that included physical evidence of defendant's palm print, made in the victim's own blood by transferring the blood upon contact from his hand to the flyer before the blood dried, therefore linking the defendant to the crime scene at or near the time of the murder; evidence of the opportunity provided by his advance knowledge of the nighttime routine and operation of the motel; evidence that the defendant had recanted his original story to the police regarding his whereabouts on the night of the murder; and testimony as to defendant's expressing possible inside knowledge of the crime to an off-duty police officer. This evidence, in conjunction with the rest of the evidence presented by the State, was sufficient to allow a reasonable trier of fact to conclude beyond a reasonable doubt, and not merely suspect, that defendant was guilty of Desmarais' murder.

Defendant next argues that the State failed to properly preserve the evidence used against him when they cut out a piece of the advertising flyer with a bloody palm print for testing.[1] He claims that the

---

[1] Defendant also raises on appeal the claim that the evidence should have been suppressed, or the conviction reversed, because the ninhydrin treatment applied to the cut-out piece of the larger flyer rendered further DNA testing of that piece impossible.

investigating officers were negligent in failing to photograph the fliers, and that the question of whether the blood got on the paper via a bloody hand, or if a clean hand was placed on already-bloodied paper, has been "forever eliminated" by the absence of a photograph of the untreated and uncut flyer. Defendant asserts that this "missing" exculpatory evidence warranted dismissal of the charges against him, based upon our decision in *State v. Bailey*, 144 Vt. 86, 475 A.2d 1045 (1984) (adopting three-prong test from *United States v. Bryant*, 439 F.2d 642, 653 (D.C. Cir. 1971), to be applied in determining whether to dismiss indictment because of State's failure to preserve evidence).

Defendant presented the trial court with several theories as to the exculpatory value of the evidence at issue. He argued that without a photograph of the flyer, taken before the application of the ninhydrin and the removal of a portion for blood analysis, it was impossible to prove or disprove the existence of marks, stains, or other information on the flier, the time the blood was deposited on the flier relative to the death of the victim, or whether the palm print was fabricated or planted on the crime scene. However, defendant did not argue before the trial court the one argument he presents to this Court — that the lack of a direct, pre-ninhydrin application, pre-cutting photograph of the flier could have indicated whether the print was made by a bloodied palm pressing on the flier, or whether the blood was already on the flier when the palm touched it. At trial, the State presented two experts who testified that their examination of the flier indicated that the blood was transferred to the flier by the hand making the print. The defense cross-examined the witnesses, but did not challenge their conclusion on the transfer of the blood to the paper. By failing to raise this claim before the trial court, defendant failed to preserve this issue for our review on appeal. Nor does defendant claim plain error in the court's denial of his motion. Therefore, we decline to address this issue on appeal. See *State v. Devine*, 168 Vt. 566, 568-69, 719 A.2d 861, 864 (1998) (declining to address claim which was not raised before the trial court).

Defendant next challenges the admission of testimonial evidence regarding his marital difficulties and the circumstances surrounding the termination of his employment at the motel. He argues that the former testimony had no relevance to any of the issues before the court, and that, in the case of both, the prejudicial effect outweighed

---

However, at trial defendant's counsel stated that after further consultation with experts in the field, she understood this claim to be incorrect and explicitly retracted it. This claim is therefore waived for purposes of appeal.

500

their probative value. The determination as to whether evidence one party seeks to admit is relevant is committed to the "sound discretion of the trial court," and we will not disturb its decision absent a showing of an abuse of discretion. *State v. Streich*, 163 Vt. 331, 351, 658 A.2d 38, 52 (1995). To support a claim of abuse of discretion, the complaining party has the burden to show that the trial court withheld its discretion or exercised its discretion upon grounds clearly untenable or unreasonable. *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988). We apply the same abuse of discretion standard of review in claims that the trial court erred in its determination of whether the prejudicial effect of the evidence at issue substantially outweighed its probative value. *State v. Webster*, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996). "This Court will not interfere with discretionary rulings of the trial court that have a reasonable basis, even if another court might have reached a different conclusion," nor will we interfere with the judgment of the trial court simply because a different court might have reached a different conclusion. *Parker*, 149 Vt. at 401, 545 A.2d at 517 (internal quotations and citations omitted).

■ The evidence of marital difficulties consisted of testimony by a witness who was defendant's co-worker at the time of the murder, and who, eight days after the murder, was told by defendant that he was getting a divorce. At trial, this testimony was solicited from the witness just after he had testified that, around the time of the murder, defendant had offered to work any of the witness' shifts for him because defendant "needed the money." Upon defendant's objection to the testimony concerning his pending divorce, the prosecution stated that the evidence was being offered to show the state of mind of the defendant at the time of the murder. Defendant claimed at trial, and now before this Court, that the evidence was offered to show a financial motive for the crime based upon "building an inference upon an inference."

The State argued that the evidence was relevant to show defendant's "situation is such that he may want to stop off someplace overnight rather than going home." The trial court accepted this reasoning and held the evidence admissible to show defendant's state of mind. Since the jury knew that defendant was married, it was appropriate to provide them with additional information concerning the state of the marriage, so that defendant's activities that night would make more sense, and thus be "more probable . . . . than it would be without the evidence." See V.R.E. 401 (definition of

relevant evidence). We find no error in the trial court's decision to admit this testimony.[2]

The second piece of testimonial evidence challenged on appeal is the testimony of Patrick Abatiell, Jr. regarding the circumstances surrounding the termination of defendant's employment at the motel. This testimony was preceded by a limiting instruction to the jury that the evidence was being offered to show motive, and should not be used to draw a negative inference about defendant's character. Abatiell testified that on the last Sunday morning of October 1997, he commented to defendant about his appearance at work. When Abatiell arrived at the motel that morning, defendant was on a couch with his feet crossed, hands in his lap, and his chin down into his chest, and wearing jeans and a baseball cap. After again finding defendant in this manner a short time later Abatiell asked: "Robert, what's the matter? You can't be like this. I mean, we need to present a good image. This doesn't look good for customers." Defendant then stood up and said: "I can't take this anymore. I don't want to put up with this crap," at which point defendant collected some belongings and left the motel. Abatiell testified that he never saw defendant at the motel again.

In responding to defendant's motion to exclude this testimony, the prosecution offered that this evidence was being presented to provide a possible motive for the robbery or the murder, as the evidence displayed an "animus" defendant may have harbored toward the motel, its owners, or its employees. The trial court accepted this reasoning and admitted the evidence. We disagree with defendant that the evidence was presented with the purpose of making an improper inference that the crime was a result of "former employee rage" and that the impact of this testimony on the jury could do nothing more than "enflame [sic] and appeal to passion." We perceive no abuse of discretion, on the grounds of relevance or excessive prejudicial effect, in the trial court's admission of this testimony.

Defendant's final argument is that the trial court erred in concluding that the sentence of life without parole was justified under the circumstances of the case. When we review the sentence imposed by a court, "[a]bsent a showing that the trial court failed to exercise discretion at all, or exercised it for purposes which are clearly

---

[2] Defendant's brief also challenges the marital difficulties evidence as unfairly prejudicial, but he failed to raise this argument at trial — the trial court only heard argument from defendant on the relevance of the evidence. Therefore, we do not address this argument on appeal.

untenable, or to a degree which is unreasonable, we will uphold the court's decision." *State v. Turner*, 150 Vt. 72, 75, 550 A.2d 5, 7 (1988). When an individual is convicted of second degree murder, the trial court must consider the aggravating and mitigating factors specifically enumerated in the sentencing statute or as suggested by the parties. See 13 V.S.A. § 2303(d)(1)-(8), (e)(1)-(7). The trial court retains discretion to apply or reject the factors, as well as to interpret the meaning of individual factors. *State v. Corliss*, 168 Vt. 333, 341, 721 A.2d 438, 444 (1998). The trial court's determination of aggravating and mitigating factors will be upheld on appeal if such determination is supported by credible evidence, even where there may be substantial evidence in the record to the contrary. *Id.* If the trial court finds that the aggravating factors outweigh any mitigating factors, the court has discretion to set the minimum term of incarceration as high as life without parole. 13 V.S.A. § 2303(b).

■ The court evaluated the aggravating and mitigating factors contained in 13 V.S.A. § 2303(d), and concluded that several of the aggravating factors were present in this case. First, it found that the murder was committed while the defendant was engaged in the commission of, or attempted commission of, a felony — in this case, assault and robbery. See 13 V.S.A. § 608. The court noted that several hundred dollars had been taken from the Econo Lodge during the shift the victim had been working, and that "it is reasonable to infer that there was a taking of money, or an attempted taking of money, from [the victim] or in her presence" constituting an assault and robbery.

■ Second, the court found that the victim was particularly vulnerable in that she was working alone at night — a fact known to defendant as a result of his prior employment at Econo Lodge. Additionally, because the victim knew defendant it was less likely she would call the police when he arrived at the motel; instead, she would have let him in. As a result, any fear or apprehension the victim "was sure to have experienced would have occurred too late for her to have called for assistance or taken steps to protect herself."

■ Third, the court found that the murder was particularly severe, brutal, or cruel, noting the extent of the injuries to the victim both as a result of the strangulation and from the subsequent mutilation of the body by acid and other chemicals and the attempt to burn the body. Fourth, the court found that the murder was random, predatory, or arbitrary in nature. In support of this conclusion, the court relied upon a definition of predatory which portrayed such

activities as "marked by a tendency to victimize or destroy others for one's own benefit."

The final factor recognized by the court, in accordance with 13 V.S.A. § 2303(d)(8), is the State's proposition that "[d]efendant is aware of his strength and is willing to use it against women, regardless of the circumstances." To support this proposition, the court referred to evidence presented by the State that defendant had previously pushed his mother-in-law against a wall and choked her, and that he had choked another woman while engaging in sexual intercourse with her.

The defense neither argued for, nor presented evidence of, any mitigating factors which it is authorized to do under 13 V.S.A. § 2303(c), (e). The court itself recognized only one — the lack of a significant prior criminal history. The court found that defendant's prior criminal history consisted of a conviction for driving under the influence. Even though the court recognized defendant's lack of a significant prior criminal history as a mitigating factor, it concluded that its value as such was lessened by the fact that defendant had consumed alcohol just prior to the murder.

The court concluded that, based on its review of aggravating and mitigating factors, the aggravating significantly outweighed the mitigating and warranted consideration of imposition of a sentence greater than the statutory minimum of twenty years imprisonment. The court found that there was no prospect for rehabilitating the defendant, and absent rehabilitation defendant posed both a serious threat to public safety and a very high risk to reoffend. The court further noted that defendant "utterly and completely" denied any responsibility for the death, showed no remorse, and cared only about himself; "[h]e is an extreme danger to the public." The court imposed a sentence of life imprisonment without parole.

In the trial court's sentencing memorandum, all of the statutory aggravating and mitigating factors were examined by the court. See 13 V.S.A. § 2303(c), (d). Review of the sentencing memorandum shows that all the factors which were ultimately relied upon by the court in its sentencing decision were supported by credible evidence. While we recognize that a punishment must be proportional to the offense charged and convicted, a conviction of life imprisonment is not out of proportion to murder. *State v. Bacon*, 167 Vt. 88, 97, 702 A.2d 116, 122 (1997) (in felony murder case, "[g]iven the seriousness of the offense for which defendant was convicted, no sentence of imprisonment could

be disproportionate") (citing *Solem v. Helm*, 463 U.S. 277, 290 n.15 (1983)). We perceive no error in the trial court's sentencing of defendant to life without parole for the commission of this murder.

*Affirmed.*