2006 VT 5

**STATE of Vermont v. Eric P. DALEY**

[892 A.2d 244]

No. 04-458

¶ 1. January 6, 2006. Defendant Eric P. Daley appeals from an aggregate sentence of twenty-six to thirty-three years imposed by the trial court following the court's acceptance of defendant's guilty plea to seven criminal charges resulting from a high speed police pursuit in which defendant struck and killed a state police trooper. Defendant contends the court erred by: (1) refusing to treat defendant's claimed unconstitutional detention, and the trooper's alleged misuse of spike strips, as mitigating factors; (2) conferring victim status on two state troopers who witnessed the incident; and (3) failing to consider as a mitigating factor defendant's testimony that he was unaware of having struck the trooper. We affirm.

¶ 2. The events that resulted in the death of State Police Sergeant Michael Johnson may be summarized as follows. On the afternoon of June 15, 2003, Trooper Michael Smith of the Vermont State Police stopped a vehicle for speeding on Interstate 91. During the ticketing process, the officer requested background information about the driver, later identified as defendant, and learned that he had previously been arrested for

possession of illegal drugs. Shortly after Trooper Smith completed the paperwork, another officer, Sergeant Page, arrived at the scene and advised Trooper Smith to detain defendant until they located a canine unit to search the car for illegal drugs. Upon learning that a unit was not available, Trooper Smith was about to inform defendant that he was free to leave when he heard defendant's tires squeal and observed defendant drive away at a high rate of speed traveling south on Interstate 91.

¶ 3. The officers pursued defendant in their cruisers with their blue lights flashing, at times reaching speeds of 120 miles per hour. They were unable to gain ground on defendant, however, who was weaving in and out of other cars on the Interstate. In the meantime, Sergeant Johnson, who was traveling in the opposite direction and monitoring the chase, radioed dispatch to determine whether Sergeant Page wanted him to lay down a set of spike mats on the highway to stop the fleeing vehicle. Sergeant Johnson had indicated that he was at mile marker seventy-six. Sergeant Page informed dispatch to advise Sergeant Johnson to deploy the spikes and to hurry because they were approaching mile marker seventy-seven and coming fast.

¶ 4. Sergeant Johnson, in response, parked his cruiser in a U-turn area of the center-median of the Interstate, crossed to the west side of the southbound lane, and began laying down spikes. As Sergeant Page approached at high speed, he observed Sergeant Johnson run across the southbound lane toward his parked cruiser. Ahead of Sergeant Page was defendant and a caravan of three vehicles carrying a group of parents and eighth graders returning from a school trip. Defendant passed two of the vehicles and was pulling in behind the third when the latter struck the spikes. Defendant in response swerved sharply to the left and lost control of his car. It crossed onto the

grass median, spun down a slope, and struck Sergeant Johnson, who was thrown about ninety feet by the collision. Defendant's vehicle came to rest in the northbound lane, about twenty-five feet from where Sergeant Johnson landed. Defendant left his vehicle, jumped over a guardrail, and escaped into the woods. With the assistance of friends, he fled to Pennsylvania, where he was eventually arrested. Sergeant Johnson was transported to Dartmouth-Hitchcock Medical Center, where he was pronounced dead about an hour after the incident. A subsequent search of defendant's vehicle revealed several bags of marijuana and smaller amounts of LSD and Ecstasy.

¶ 5. Defendant was charged with seven separate counts, including grossly negligent operation of a motor vehicle with death resulting, leaving the scene of an accident with death resulting, attempting to elude a police officer, second-degree murder, and three counts of possession of illegal drugs. Pursuant to a negotiated plea, the State agreed to reduce two of the possession charges, to reduce the murder charge to involuntary manslaughter, and to run several of the charges concurrently, for a maximum exposure of thirty-three years. The Department of Corrections filed a presentence investigation report, defendant filed a sentencing memorandum to which the State responded, and the court held a sentencing hearing over the course of three days in September 2004. At the conclusion of the hearing, the court sentenced defendant to a term of twenty-six to thirty-three years, consistent with the negotiated plea. This appeal followed.

¶ 6. Our review in this matter is limited. As we have frequently observed, the trial court enjoys broad discretion in imposing sentence. *State v. Ingerson*, 2004 VT 36, ¶ 10, 176 Vt. 428, 852 A.2d 567; *State v. White*, 172 Vt. 493, 501-02, 782 A.2d 1187, 1193 (2001). Absent exceptional circumstances, we will defer to the court's judgment so long as the sentence is within the statutory limits and was not based on improper or inaccurate information. *Ingerson*, 2004 VT 36, ¶ 10. With these standards in mind, we turn to defendant's claims.

¶ 7. Defendant contends initially that the court abused its discretion in refusing to consider his allegedly unconstitutional detention as a mitigating factor. Defendant argued at sentencing that the police exceeded their authority when, following issuance of the speeding ticket, they attempted to detain him further to conduct a dog-sniff search of the vehicle for drugs. Defendant claims, as he stated in his sentencing memorandum, that the incident "would have been avoided and Sergeant Johnson would not have been accidentally killed if the speeding ticket was issued to [defendant] without delay." Defendant also suggests on appeal that his claim to mitigation is analogous to 13 V.S.A. § 2303(e)(5), the statutory mitigating factor for murder sentences where the defendant acts "under duress, coercion, threat or compulsion insufficient to constitute a defense but which significantly affected his or her conduct."

¶ 8. The trial court rejected the argument, finding that even if defendant's constitutional claim had merit, or that it was reasonable for defendant to feel unjustly treated or angered by the police detention, it did not in any way mitigate, excuse, or explain defendant's subsequent conduct that resulted in Sergeant Johnson's death. The court's rejection of the police stop as a mitigating factor, or as some type of threat or duress ameliorating defendant's actions, was well within its broad sentencing discretion, and therefore can not be disturbed on appeal. *Ingerson*, 2004 VT 36, ¶ 10. Indeed, even if we disagreed with the trial court's finding in this regard — which we do not — it would not warrant a reversal of the sentence. See *State v. Simoneau*, 2003 VT 83, ¶ 21, 176 Vt. 15, 833 A.2d

1280 (noting general rule that we will not disturb discretionary rulings of trial court that have a reasonable basis even if this or another court would have reached a different conclusion); *White*, 172 Vt. at 502, 782 A.2d at 1193-94 (holding that trial court retains wide discretion to apply or reject mitigating and aggravating factors, as well as to interpret meaning of individual factors, and its determination must be upheld absent abuse of discretion). Accordingly, we discern no basis to disturb the sentence on this ground.

¶ 9. Defendant next contends the court erroneously refused to consider as a mitigating factor his claim that the use of spike strips contravened police procedures and regulations, at least in part because there was insufficient time for Sergeant Johnson to safely deploy them and seek adequate cover. The court found that even assuming the use of the spikes was ill-advised or contrary to regulations, it did not mitigate defendant's culpability given the various opportunities that remained for defendant to prevent the crash simply by stopping, slowing down, or staying in his lane and running over the spikes. As was true of its finding concerning the allegedly illegal stop, the court's rejection of defendant's mitigation argument in this regard was well within its broad sentencing discretion, and therefore may not be disturbed on appeal. *Ingerson*, 2004 VT 36, ¶ 10; *White*, 172 Vt. at 502, 782 A.2d at 1193-94.

¶ 10. Defendant further asserts that the court erred in conferring "victim" status on Trooper Smith and Sergeant Page under 13 V.S.A. § 5321(a)(2), which provides that the "victim of a crime" has the right at sentencing "to appear, personally, to express reasonably his or her views concerning the crime, the person convicted, and the need for restitution." The court ruled that, as co-workers of Sergeant Johnson and witnesses to the incident, both officers were entitled to give victim-impact testimony. Defendant contends the court's ruling conflicts with the statutory definition of "victim," which arguably includes only those who suffer direct physical, emotional, or financial injury at the hands of the defendant, and a limited group of relatives of the victim.[1] Defendant claims that others, such as Sergeant Page and Trooper Smith, who witnessed the incident, fall within the separate statutory definition of "affected persons" who are entitled to receive notice of a defendant's release or escape but not to offer victim-impact testimony at sentencing.[2]

---

[1] Under 13 V.S.A. § 5301(a)(4), "'[v]ictim' means a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime or act of delinquency and shall also include the family members of a minor, incompetent or a homicide victim."

[2] Under 13 V.S.A. § 5301(5), an

'[a]ffected person' means any of the following persons who has requested notification in writing from the court or the department of corrections:

(A) Witnesses;

(B) Jurors;

(C) Family members who are not covered by subdivision (4) of this section;

(D) Any other persons who demonstrate to the court that the release or escape of a defendant will constitute a threat of physical, emotional or financial injury or death.

¶ 11. Although we have not previously addressed this issue, we need not do so here. A review of the record reveals that the officers' "impact" testimony consisted, in total, of three sentences. When queried about the effect that Sergeant Johnson's death had on him, Trooper Smith responded: "Obviously quite profound. He was a mentor, taught me a lot about the job, life in general." When asked the same question, Sergeant Page answered: "I lost a friend, a co-worker and it makes it just a little more difficult to go to work." The state's attorney did not advert to the officers' testimony during his closing argument, and the trial court did not rely to any extent on the testimony during its explanation of the factors that went into the sentencing decision. Foremost among these were the extreme recklessness and indifference to human life demonstrated by the circumstances of the offense, during which defendant drove around and among other occupied vehicles at speeds approaching 120 miles per hour, putting himself and others at extreme risk, and then fled the scene without regard for the consequences of his actions; defendant's criminal history, which included a prior high-speed police pursuit; the risk that defendant posed to the community; and the strong societal interest in making a clear statement that such behavior will not be tolerated and will, in fact, be severely punished. Thus, it is readily apparent from the record and the court's findings that the sentence was driven by defendant's recklessness, his risk to public safety, and the need for deterrence, rather than by any impact on the emotions of Sergeant Johnson's fellow officers. Accordingly, any error in the admission of the officers' testimony was harmless. See *State v. Gibney*, 2003 VT 26, ¶ 53, 175 Vt. 180, 825 A.2d 32 (recognizing that we apply harmless error analysis to sentencing error); *State v. Bacon*, 169 Vt. 268, 273, 733 A.2d 50, 54

(1999) (holding that any error in considering victim's standing in the community was harmless where record showed that other valid aggravating factors established an "independent basis for the sentencing decision").

¶ 12. Finally, defendant contends the court erred in failing to consider as a mitigating factor defendant's claim that he was unaware of having hit Sergeant Johnson when he fled the scene. The argument is unpersuasive. First, we note that defendant pled guilty to the charge of leaving the scene of an accident in which death resulted, which by definition includes the elements of actual knowledge of the accident, and actual or constructive knowledge of injury or damage resulting from the accident. *State v. Keiser*, 174 Vt. 87, 92-93, 807 A.2d 378, 383-84 (2002); *State v. Sidway*, 139 Vt. 480, 485-86, 431 A.2d 1237, 1239-40 (1981). Thus, defendant's claim was, at best, an appeal to some lingering or residual doubt about his guilt notwithstanding the plea. Second, the court implicitly found that defendant's claim lacked credibility, and the finding was well supported by the evidence. There was no dispute that defendant actually knew he swerved off the road at a high rate of speed, spun through the median, and came to rest on the other side of the Interstate. This qualifies as an "accident" under the hit-and-run statute by any normal understanding of the term.[3] See *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663

---

[3] Under 23 V.S.A. § 1128(a), "[t]he operator of a motor vehicle who has caused or is involved in an accident resulting in injury to any person other than the operator, or in damage to any property other than the vehicle then under his or her control shall immediately stop and render any assistance reasonably necessary."

A.2d 930, 932 (1995) (in construing statute we presume Legislature intended plain, ordinary meaning of its terms); *N. Sec. Ins. Co. v. Perron,* 172 Vt. 204, 211, 777 A.2d 151, 156 (2001) (observing that "[a]n accident is generally understood to be an event that is undesigned and unforeseen") (quotations omitted).

¶ 13. The evidence also supported a finding that defendant had actual or constructive knowledge of injury resulting from the accident. We have held that constructive knowledge of injury under the hit-and-run statute entails an objective inquiry into what "a reasonable person would have gathered from the circumstances of the accident," so that the fact finder may "impute to defendant knowledge that a reasonable investigation of the circumstances of the accident would reveal." *Keiser,* 174 Vt. at 93, 807 A.2d at 384. Defendant here acknowledged that he observed an individual on the right side of the road and a parked vehicle on the left just before he swerved off the highway, and was aware of other vehicles in the vicinity. The evidence thus supported the court's finding of "a high likelihood that any impact of [defendant's] car would have an effect on the other traffic, the other vehicles and Sergeant Johnson." The evidence also showed that defendant's vehicle was only a short distance (some twenty-five feet) from Sergeant Johnson's body when defendant exited the vehicle and fled the scene. Thus, the evidence was sufficient to support a finding that a reasonable investigation of the circumstances would have revealed Sergeant Johnson's injuries, which in turn supports the court's finding that defendant left the scene in callous disregard of the consequences of his actions. See *White,* 172 Vt. at 502, 782 A.2d at 1193-94 (trial court's determination of aggravating and mitigating circumstances will be upheld if supported by credible evidence). As the trial court explained, society's "sense of decency . . .

is offended by a person being able to get away with bringing about such a violent crash and then just simply leaving it." Accordingly, we conclude that the trial court did not improperly overlook mitigating evidence or abuse its discretion in imposing sentence on the count of leaving the scene of an accident where death resulted.

*Affirmed.*