2009 VT 14

**STATE of Vermont v. Vladimir AVGOUSTOV**

[969 A.2d 139]

No. 07-462

¶ 1. January 26, 2009. Defendant Vladimir Avgoustov appeals from his sentence for aggravated sexual assault. He claims that the trial court erred by: (1) failing to read and consider a psychosexual evaluation (PSE) and a presentence investigation report (PSI);

(2) failing to make affirmative findings in support of its imposition of the statutory default sentence; (3) rejecting the recommendations in the PSE and PSI; and (4) basing his sentence on certain purportedly deficient findings. We disagree and affirm.

¶ 2. Defendant was charged with aggravated sexual assault on a minor, 13 V.S.A. § 3253(a)(8), as a result of acts he committed while working as an instructor at a circus camp. During his plea colloquy, defendant admitted that he had contact between his mouth and a seven-year-old girl's vulva. The court accepted defendant's guilty plea, pursuant to an agreement under which defendant was free to argue for a downward departure from the presumptive ten-year minimum sentence, and the State was "capped" at arguing for a maximum of fifty years' incarceration.*

I.

¶ 3. Defendant first asserts that the trial court erred as a matter of law by failing to read and consider the PSE and PSI. Defendant's contention depends on a selective reading of the record, however. While defendant is correct that there are statements in the transcript which, taken alone, could be construed to mean that the judge had not read one or the other of the reports, those statements must be read in light of the entire transcript, which is to the opposite effect. The trial

---

* During the plea colloquy, the court noted that "[t]he statute provides that you could get a sentence of life imprisonment as a maximum sentence," but then stated that "[u]nder the plea agreement the Court can impose a maximum sentence of no more than 50 years to serve." At sentencing, however, defendant agreed with the sentencing judge that the plea agreement had no impact on the court's statutory obligation to impose a maximum term of life. See 13 V.S.A. § 3271.

judge referred explicitly at the sentencing hearing to materials in both the PSI and PSE, and stated clearly that she had read both. Further, defendant raised no objection below to the court's purported failure to consider the PSE and PSI, and made no motion for sentence reconsideration. See V.R.Cr.P. 35. While such a motion is not mandatory, it would seem to have been the better course on this record. In this situation, where the record — even considered in the light most favorable to defendant's argument — is equivocal, and there was no objection raised that might have enabled a sharper development of the facts, we conclude that the trial court did read and consider both reports. We find no error.

## II.

¶ 4. Defendant also argues that the trial court either failed to make any findings at all, or failed to support the findings it did make, in support of its imposition of the statutory default sentence of ten years to life. Under our law, those who commit aggravated sexual assault "shall be imprisoned not less than ten years and a maximum term of life," 13 V.S.A. § 3253(b), and the ten-year term "may not be suspended, deferred, or served as a supervised sentence." *Id.* § 3253(c)(1). The sentencing court may, however, "impose a lesser term . . . if the court makes written findings on the record that the downward departure will serve the interests of justice and public safety, provided that in no event may the court impose a term of incarceration of less than five years." *Id.* § 3253(c)(2).

¶ 5. We disagree with defendant's assertion that the sentencing court was required to make written findings before imposing the statutory default sentence. Defendant did not request such findings, and the sentencing statute requires only that written findings be made if the court decides to impose a *lesser* sentence than the ten-year presumptive minimum. De-

fendant has advanced no statutory or other basis that would require the sentencing judge to make written findings to justify *not* departing from the statutory presumptive sentence. What is absolutely clear from §§ 3253 and 3271 is that the Legislature intended those who sexually assault children to face severe mandatory penalties, and that only *downward* departures from those penalties need be justified by written findings.

## III.

¶ 6. Defendant also contends that several of the court's statements at sentencing cannot be reconciled with the PSE and PSI, and are therefore clearly erroneous. We disagree.

¶ 7. First, defendant takes issue with the court's finding that incarcerating him for a minimum of ten years would advance public safety by denying him access to "the pool of potential victims." Defendant argues that the pool of potential victims was "limited because the context in which this occurred is unusual and very specific." According to defendant's reading of the PSE and PSI, defendant poses no risk to reoffend if he is not involved in coaching young children in gymnastics. Moreover, defendant contends that the court's failure to agree with this assessment amounts to clear error. But the court did not have to credit defendant's optimistic reading of the PSE and PSI. Instead, the court properly considered the PSE and PSI, and found that although the circumstance of working in a circus camp may have contributed to defendant's conduct, defendant "could have taken steps to avoid contact with girls of this age or to ensure another adult was present during all such contact, but he chose not to and thus created a risk of this very offense occurring." The court appears to have agreed with defendant that the assault occurred in, and may have been precipitated in part by, a specific context, but the court also properly found

that defendant was entirely responsible for his own presence in that context.

¶ 8. Defendant next argues that the court erred in concluding that defendant's likely future deportation was a neutral factor in sentencing. As noted in the PSI, the Department of Corrections has apparently received a letter from the federal Department of Homeland Security requesting that it be notified when defendant is released from custody. The parties agree that the gravamen of this letter is that defendant will quite likely be deported from the United States after serving his term of incarceration, because federal law renders felons deportable. Defendant appears to argue that the court should have imposed a more lenient sentence — of five years — given his possible deportation. The trial court acknowledged that defendant's conviction "may have more consequences" for him than it would have for other defendants. The court went on to agree with the State, however, that defendant should not receive more lenient sentencing treatment than other defendants merely because he could be deported upon release from custody.

¶ 9. Although defendant contends that the sentence imposed operated to deny him the opportunity to participate in sex-offender treatment upon his release, it was actually the fact of his conviction and the operation of federal law that did so. That is, the sentencing court simply had no power to ensure that a deportable alien would receive post-incarceration treatment. Had the court imposed the five-year sentence defendant requested, he would presumably have been subject to deportation at the end of that term, and would not have received treatment while incarcerated. The court did not err in deeming the prospect of deportation a neutral factor.

¶ 10. Defendant's final argument regarding deportation is that the trial judge ignored the prospect of deportation when she stated her intention that defendant serve a minimum sentence of "not a day more" than ten years. Defendant notes that, as a practical matter, he will likely be placed in predeportation detention by the federal government immediately upon the expiration of the incarcerative portion of his sentence. The sentencing court, however, quite properly did not attempt to account for the speculative impact of the deportation proceedings on the length of defendant's incarceration. The fact that a defendant in a Vermont court may face incarceration under federal authority upon the expiration of his state sentence need not have any impact on the sentence the Vermont court imposes.

¶ 11. Defendant also generally takes issue with the court's conclusion that the interests of justice would not be served by a downward departure. The court concluded that there were "no mitigating circumstances with regard to how the crime occurred," that defendant's act was an abuse of a position of trust, and that the crime involved the exploitation of a very young victim. The court found that a downward departure in this case would "send the wrong message to the defendant and the community." To the limited extent that these conclusions are reviewable, we find no error. The Legislature has determined that sexual assault of children is a tremendously grave offense, worthy of some of the harshest mandatory penalties in our criminal code. Defendant has not directly attacked the conclusions noted above, but has essentially argued that the court was required, as a matter of law, to interpret the PSE and PSI as mandating a downward departure. Although the PSI and PSE are often important in determining an appropriate sentence, see *In re Carter*, 2004 VT 21, ¶ 51, 176 Vt. 322, 848 A.2d 281, neither is a substitute for the court's sound discretion, which was properly exercised here.

¶ 12. Finally, defendant contends that the court erred in imposing a maximum

sentence of life imprisonment. At sentencing, however, defense counsel himself stated that "the court is obligated under the statute to impose a sentence of life on the max." Immediately following this concession, the sentencing judge stated her inclination to impose a maximum term of life, in compliance with 13 V.S.A. § 3271, and defendant interposed no objection. Thus, the argument was waived, and we do not address it. See *supra*, ¶ 2 n∗.

### IV.

¶ 13. Defendant also contends that the court erred in stating generally that sexual assaults on children often have a lifelong impact on victims. Defendant asserts that the record does not support the statement and that there is therefore no support for the "extremely harsh" sentence imposed. Defendant also asserts that there was no support in the record for the trial court's finding that defendant posed "a risk of harm to others."

¶ 14. As to the first argument, defendant mischaracterizes the sentence as "extremely harsh" and "especially severe." In fact, the sentence imposed is the presumptive sentence for the crime defendant committed. Defendant's contention that the presumptive sentence for his crime is too harsh would be better directed to the Legislature, which decided upon it in the first instance. In any event, any objection to the trial court's statement concerning the impact of sexual assaults on child victims was waived when defendant did not raise it at the time of the statement or by motion under V.R.Cr.P. 35(d). We also note that defendant's assertion that there was no evidence in the record supporting the finding that his crime has had a lasting impact on the victim is directly contrary to the victim's parents' testimony at the sentencing hearing. The trial court's more general statements concerning the impact of sexual assaults on very young victims did nothing more than recognize the widely held beliefs that prompted the Legislature to penalize such crimes so severely. Even if these statements had been unsupported by the record or common knowledge, they did not sway the trial court from imposing the presumptive sentence prescribed by the Legislature. See *State v. Daley*, 2006 VT 5, ¶ 6, 179 Vt. 589, 892 A.2d 244 (mem.) ("Absent exceptional circumstances, we will defer to the court's judgment so long as the sentence is within the statutory limits and was not based on improper or inaccurate information.").

¶ 15. Defendant's argument that the trial court had no evidentiary basis to find that he posed a risk of harm to others also fails. The PSE and PSI both support the finding that, although defendant may not have posed a *high* risk to reoffend, he did present *some* risk. Defendant was assessed as posing a "moderate-low" risk to commit another sexual assault, and a "low" risk of criminal recidivism generally. In addition to this explicit statement, the PSI contains recommended probation conditions, many of which are plainly motivated by the PSI author's opinion that defendant poses some risk to reoffend. Further, the PSE author's testimony supported the finding. Neither the PSE nor the PSI suggests that defendant did not pose *any* risk to reoffend or harm others, but only that the risk he posed was in the moderate-to-low range, as compared to other convicted sex offenders. There was no error in concluding that defendant posed a risk of harm to others.

*Affirmed.*