# State of Vermont v. Wolf Keiser

[807 A.2d 378]

No. 01-132

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed June 28, 2002

*William H. Sorrell,* Attorney General, and *John Treadwell* and *David Tartter,* Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Devin McLaughlin* and *Christopher Davis* of *Langrock Sperry & Wool,* Middlebury, for Defendant-Appellant.

**Morse, J.** Defendant Wolf Keiser appeals the judgment of the district court and its subsequent orders denying his motions for judgment of acquittal and for a new trial following a jury verdict finding defendant guilty of leaving the scene of an accident, fatality resulting, in violation of 23 V.S.A. § 1128(c). On appeal, defendant contends: (1) the trial court issued an erroneous instruction regarding constructive knowledge in response to a jury question; (2) the trial court erroneously declined to include defendant's requested additional instruction in response to the jury question; (3) the trial court committed plain error by failing to instruct the jury that Vermont's hit-and-run statute requires actual knowledge that the accident involved a person or property of another; (4) the jury verdict is not supported by the evidence at trial; (5) the trial court improperly admitted evidence of defendant's past DWI convictions; and (6) the trial court's sentence of ten to fifteen years to serve violates the proportionality clause of the Vermont Constitution and is an abuse of the court's discretion. We affirm.

In the early morning of September 12, 1999, while defendant was driving back to his home from a friend's house, he heard and felt an impact to the right side of his vehicle. His passenger's side windshield cracked in a spider web formation, and, according to him, he stopped his car, backed up, and got out to see what he had hit or what had hit him. Defendant testified that he found nothing, and then traveled to his home, retrieved a flashlight, and returned to the accident site to see if he had hit anything. Again, he found nothing, and returned home.

Defendant's car had struck Joshua Welch, who was thrown to the side of the road. The impact occurred between 12:00 and 1:00 a.m. The victim was found at roughly 10:00 a.m. the next morning by two women who were on a walk. He was taken to the hospital, where he died on September 13 from multiple head injuries.

The State charged defendant with leaving the scene of the accident, fatality resulting. See 23 V.S.A. § 1128(c). At the close of evidence the court gave instructions to the jury on the elements of the charged crime. During deliberations the jury returned the following question regarding the court's instruction on one of the knowledge elements of the crime: "Did Wolf have to *know* he hit a person or did he have to *think or suspect* he hit a person ... according to the law?" (Emphasis in original.)

After discussion with counsel, the court issued the following reply:

> The State does not have to prove that the defendant had
> actual knowledge that a person had been injured. The State

can meet its burden of proof with regard to the element of knowledge of the resultant injury if it proves that, after conducting a reasonable investigation, a reasonable person would have anticipated injury to another person. This is what is called "constructive knowledge" that I described to you in the Jury Instructions.

In so doing, the trial court declined to issue defendant's requested instruction informing the jury that it could not find defendant guilty if it determined that defendant merely thought or suspected that he hit a person. The jury returned a guilty verdict on February 12, 2001. Defendant was sentenced to ten to fifteen years. He now appeals. We address his arguments in turn.

## I.

Defendant's main contention centers on whether the above instruction was an erroneous response to the jury's inquiry. Defendant first argues that the court misconstrued the duties of 23 V.S.A. § 1128(a), by including a reasonable investigation requirement in its constructive knowledge instruction. The language "after conducting a reasonable investigation," defendant argues, created an affirmative duty to stop and investigate an accident regardless of whether a person has actual or constructive knowledge of injury to either the person or property of another. The State argues not only that the supplemental instruction was within the letter of the law, but also that defendant did not preserve his right to appeal on this issue because he did not object after the instruction was given to the jury.

## A.

As a threshold matter, therefore, we must determine whether defendant properly preserved this issue for appeal. The State correctly argues that, in general, objecting before instructions are issued to the jury is insufficient to preserve the issue for appeal; counsel must object *after* they are given to the jury. See *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992) ("According to V.R.Cr.P. 30, as interpreted in our cases, failure to object to an instruction after it is given to the jury is considered a waiver of any error even if the substance of the objection is made known before the jury charge."); see also *State v. Tahair*, 172 Vt. 101, 104-05, 772 A.2d 1079, 1082 (2001). This case, however, involves a supplemental instruction issued to the jury in response to a jury question given to the court during deliberations. The context differs from the circumstances at the conclusion of the

initial charge to the jury, at which point counsel's obligation to object is well defined, see *Wheelock*, 158 Vt. at 306, 609 A.2d at 975. We have yet to address the question of whether counsel must renew an objection after a supplemental instruction. Cf. Reporter's Notes, V.R.Cr.P. 30 (noting that rule does not apply to "such further instructions as the jury may require after it has retired").

Questions from a jury during its deliberations should be disclosed to counsel and counsel given an opportunity to be heard before the trial judge responds. *Rogers v. United States*, 422 U.S. 35, 39 (1975); *United States v. Ronder*, 639 F.2d 931, 934 (2d Cir. 1981). A party's objections to the court's response to a jury question must be stated with specificity. See *State v. Covino*, 163 Vt. 378, 380-81, 658 A.2d 916, 918 (1994).

The primary purpose of requiring a timely and specific objection is to give the trial court the opportunity to avoid or correct an error. See *Wheelock*, 158 Vt. at 306, 609 A.2d at 975. In the supplementary context, when objections are specifically stated, this concern is adequately addressed by objecting before the court addresses the jury. If the parties have been given an opportunity to review the proposed instruction and to argue their objections, the trial court has been afforded adequate opportunity to respond to any alleged error. To require counsel to again object after a single supplemental instruction in order to preserve the issue is ordinarily unnecessary given the narrow scope of the instructions.

A review of the record in this case shows that the court did give both parties notice of the jury's question and an opportunity to participate meaningfully in the court's response. During the colloquy, after the court distributed the proposed instruction, defendant did object to the reasonable investigation language. ("And just so the record is clear, we object to the insertion of a reasonable investigation requirement. We don't think it is required under the law of *Sidway*.") Prior to the defense counsel's formal objection, there had been a lengthy dialogue with the court in reference to the constructive knowledge supplemental instruction and specifically the requirement of the reasonable investigation. *State v. Sidway*, 139 Vt. 480, 431 A.2d 1237 (1981), was identified by both parties and the court as the case on point. There was a noted disagreement between defendant and the court as to whether this Court in *Sidway* found a duty to conduct a reasonable investigation after an accident, independent of the driver's knowledge of injury to another person or property. After going back and forth on the topic, the court made it

clear that the supplemental instruction's language "after conducting a reasonable investigation" was proper. Because of this dialogue and the clearly noted objection given by defendant's counsel, we find the issue was properly preserved for appeal.

## B.

We now turn to whether the trial court's supplemental instruction on constructive knowledge was an erroneous response to the jury's inquiry. Defendant asserts that the lower court confused the jury with its answer to their question on the issue of constructive knowledge by conflating a defendant's duties once knowledge of an accident and injury are established with the inquiry of whether knowledge has in fact been established.

Title 23, § 1128 provides in relevant part:

> The operator of a motor vehicle who has caused or is involved in an accident resulting in injury to any person other than the operator, or in damage to any property other than the vehicle then under his or her control shall immediately stop and render any assistance reasonably necessary. The operator shall give his or her name, residence, license number and the name of the owner of the motor vehicle to any person who is injured or whose property is damaged and to any enforcement officer.

Vermont's "hit-and-run" statute, as pointed out in *Sidway*, is to prohibit drivers of motor vehicles from seeking to evade civil or criminal liability, and from leaving persons injured, abandoned and in need of first aid or medical care. *Sidway*, 139 Vt. at 484, 431 A.2d at 1239; see also *State v. Severance*, 120 Vt. 268, 272-73, 138 A.2d 425, 428 (1958). The statute imposes a duty on operators to take affirmative action by stopping to give aid and information. *Sidway*, 139 Vt. at 484, 431 A.2d at 1239; *Severance*, 120 Vt. at 273, 138 A.2d at 428.

Title 23, § 1128 is silent on the issue of knowledge. *Id.* Notably, several states in such circumstances have concluded that actual knowledge of the accident *alone* is sufficient to impose criminal liability for failing to stop and render aid. See, e.g., *Goss v. State*, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979); *State v. Vela*, 673 P.2d 185, 188 (Wash. 1983); see also Annotation, *Necessity and Sufficiency of Showing, In Criminal Prosecution Under "Hit-and-Run" Statute, Accused's Knowledge of Accident, Injury, or Damage*, 26 A.L.R.5th 1, 28-32 (1995). In *Sidway*, we similarly determined that, because the statute

imposes affirmative duties on an individual, some level of knowledge is required before criminal liability can be imposed. *Sidway*, 139 Vt. at 484, 431 A.2d at 1239. We concluded that, at minimum, actual knowledge of the accident was required. *Id.* We went further, though, and concluded that some level of knowledge with respect to resulting injury or property damage must also be shown to impose liability, but stopped short of requiring actual knowledge of that. *Id.* at 486, 431 A.2d at 1240. We determined that constructive knowledge was sufficient. *Id.*

■ Inherent in the concept of constructive knowledge is what an objective examination of the facts would reveal to a reasonable person. See Black's Law Dictionary 876 (7th ed. 1999) ("Knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law"). In other words, rather than requiring a jury to infer actual knowledge on the part of the defendant from circumstantial evidence, we stated in *Sidway* that a defendant could be *"imputed"* with knowledge that a reasonable person would have gathered from the circumstances of the accident or impact, i.e., what a reasonable evaluation of the circumstances would reveal. *Sidway*, 139 Vt. at 485-86, 431 A.2d at 1239-40 (noting "[i]t is not necessary to show, by direct or circumstantial evidence, that the defendant had actual knowledge of any resultant injury or damage"). Thus, the trial court's instruction on constructive knowledge, allowing the jury to impute to defendant knowledge that a reasonable investigation of the circumstances of the accident would reveal, was consistent with the spirit and doctrine of our decision in *Sidway*, and did not constitute reversible error. See *State v. Williams*, 154 Vt. 76, 81, 574 A.2d 1264, 1267 (1990) (we review substance of jury instructions to determine if the challenged instruction captures the "true spirit and doctrine of the law" to ensure that the jury has not been misled or confused).

■ Defendant asserts, however, that the instructions allow for a defendant to be held criminally liable simply for failing to adequately investigate an impact. But that is precisely what *Sidway* contemplated by allowing the State to meet its burden by showing constructive knowledge. In other words, if a defendant actually knows he was involved in an accident, and an examination of the circumstances of the accident would lead a reasonable person to conclude that a person or property had been injured, imposing criminal liability for a failure to render aid is not unreasonable. Defendant argues that juries should instead be allowed to consider only the impact itself when determining

whether knowledge of injury should be imputed. Adopting defendant's position, however, would limit jurors to considering only that information an individual who was in an accident, but failed to stop, would have available. This would discourage individuals from stopping to investigate an impact, for they might acquire actual knowledge placing them in a poorer position than the defendant who kept going. This is precisely contrary to the desired effect of encouraging motorists to stop after an accident.

## C.

 Defendant makes the related argument that the court erred by failing to affirmatively instruct the jury that it could not find defendant guilty if it found that he merely thought or suspected that he had hit (and thus injured) a person.

The jury's question specifically referenced the trial court's instruction on constructive knowledge issued prior to deliberation, and noted that it was concerned with the alternative to finding that defendant possessed actual knowledge. The original instruction was as follows:

> The law requires not only knowledge of an accident, but also knowledge of resultant injury to another person. Knowledge of the resultant injury may be proven by direct and/or circumstantial evidence. . . . In this case, with this charge, the State can also prove this element of the offense by showing that the defendant had constructive knowledge that another person was injured. It is not necessary to show by direct or circumstantial evidence that the defendant had actual knowledge that another person was injured. If an impact occurs under such circumstances that a reasonable driver would anticipate injury to another person, then you may decide that the driver knew of the injury because, under the circumstances, he should have known that another person had been injured.

Constructive knowledge being an objective inquiry, defendant's subjective state of mind was not relevant to the inquiry. In fact, because *Sidway* allows the State to meet its burden with a showing of constructive knowledge, a jury could find defendant guilty even if it determined that defendant merely suspected that he hit and injured a person if it also found that a reasonable person would have *known* he had injured a person under the circumstances. Thus, the trial court's

failure to issue defendant's requested instruction in response to the jury's question regarding constructive knowledge was not an abuse of discretion. See *State v. West*, 151 Vt. 140, 142-43, 557 A.2d 873, 875 (1988) (we review the trial court's decision to issue a supplemental jury instruction for abuse of discretion).

## II.

Defendant next advocates that this Court interpret 23 V.S.A. § 1128 to include a *third* knowledge requirement. More specifically, he argues that the statute should be read to require *actual* knowledge that an accident *involved* a person or property of another, separate and distinct from the element of knowledge regarding *injury* to such. Defendant concedes that he is raising this issue for the first time on appeal and, therefore, this Court should review the trial court's failure to include an instruction on such an element only for plain error. See *Tahair*, 172 Vt. at 110, 772 A.2d at 1086 (noting that plain error exists "only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights") (internal quotation marks and citation omitted).

Under defendant's theory, a jury would first have to decide whether a defendant had actual knowledge of an accident or impact. Then it would have to decide whether the individual had actual knowledge that the impact involved person or property of another. Lastly, it would have to decide whether a defendant had actual or constructive knowledge of injury to that person or property before it could find a defendant guilty for failing to stop and render aid. We cannot say that the trial court's failure to instruct the jury accordingly constituted plain error based in part on the fact that the statute itself is completely silent on a knowledge requirement. Furthermore, there is no case from this Court interpreting the statute in this way. As noted above, some courts confronted with hit-and-run statutes lacking a knowledge requirement have merely required knowledge of the collision before imposing criminal liability. And defendant points to no state that separates its knowledge requirement into the *three* separate inquiries described above. See also Annotation, *supra*. In light of this, we can hardly fault the trial court for failing to discern a knowledge requirement on three separate elements, as opposed to the two this Court identified in *Sidway*.

Additionally, implicit in the inquiry regarding knowledge of injury outlined in *Sidway* is a determination that the resultant injury was to

person or property of another. Thus, were we to adopt defendant's reading of the statute, we would have to overrule *Sidway* to the extent that it allows a jury to *impute* knowledge to a defendant that the injury involved person or property of another.

## III.

Defendant also argues that he was entitled to judgment of acquittal as the evidence does not support the jury's verdict of guilty. We disagree.

We will affirm a conviction if, looking at the evidence in the light most favorable to the State and excluding modifying evidence, the State has produced evidence that fairly and reasonably supports a finding of guilty beyond a reasonable doubt. *State v. White*, 172 Vt. 493, 497, 782 A.2d 1187, 1190 (2001). "A judgment of acquittal is proper 'only if the prosecution has failed to put forth any evidence to substantiate a jury verdict.'" *Id.* at 498, 782 A.2d at 1191 (quoting *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999)). Viewing the evidence in the light most favorable to the State in this case fairly and reasonably supports a verdict of guilty.

Defendant does not dispute that he had actual knowledge of the impact, that his car did in fact hit the victim, or that he did not render aid to the victim. He does dispute, however, whether the State sufficiently met its burden on the issue of his knowledge, actual or constructive, of injury. The State introduced the following evidence tending to show knowledge on the part of defendant with respect to the impact causing injury to a person: Defendant's windshield was smashed and the post on the passenger side of his vehicle was dented by the impact. Defendant's right front fender was also dented. The two women who found the victim the following day testified that, at least in daylight, the victim was clearly visible from the road, and, although his head was leaning down the embankment on the side of the road, the rest of his body was on the flat grassy area beside the traveled portion of the road. One of the officers responding to the scene the following day said he could hear the victim making gurgling noises as he approached, caused by his partially blocked air passage. He also testified that the victim was in an open area which was not overgrown with brush, and he could see the victim's entire body from the roadway. A man who lived in the vicinity of the accident testified to being woken up that night by screeching tires and a loud noise. He then heard someone yell "Hey!" When he went to the window, he saw someone get out of a stopped car with its hazard lights on, walk to the

edge of the road, look left, right and over the bank, and then return to his car and drive away.

After seeing a news report the Monday morning after the accident in which it was reported that someone had witnessed the accident, defendant reported to the police. The two officers on duty at the station spoke to defendant first. While one retrieved a glass of water during the interview, defendant made an unsolicited statement to the attending officer that the victim had been walking on the wrong side of the road. Defendant admits to making this statement. A detective on the case testified that, at the time, only one other individual who had passed the victim earlier in the night knew which way the victim was walking, and that he was walking with traffic, as opposed to against it. In a tape-recorded interview with one of the detectives working on the case, defendant said he thought he might have hit a person, but he did not call the police because he was fearful that it would change his life "legally." Defendant also admitted to drinking that evening, stating that he had roughly six beers in the course of the night, but had felt good enough to drive. He stated that he merely felt "a little buzz." At the conclusion of the interview the detective asked defendant if he had not called the police because he thought alcohol was an issue and he did not want to get a DWI. Defendant answered "yes." He also asked defendant if he realized or thought "deep down" that he hit a person and that is why he had called out after the impact, and he said "yes." Lastly, at trial, defendant offered a conflicting story regarding the events of that evening.

Viewed in the light most favorable to the State, this evidence fairly and reasonably supports a jury determination that defendant possessed either actual or constructive knowledge of injury to a person and therefore does not leave the finding of guilt uncertain or dependent on mere conjecture. See *State v. Brooks*, 163 Vt. 245, 255, 658 A.2d 22, 29 (1995) (evidence that leaves guilt uncertain or resting on mere conjecture is insufficient). Thus, we will not disturb the jury's verdict in this case.

## IV.

Defendant next argues that the trial court erroneously admitted evidence of his two prior convictions for driving while intoxicated. The State contends that defendant has waived his claim of error on appeal by introducing evidence of the prior convictions himself, relying on *Ohler v. United States*, 529 U.S. 753 (2000).

## A.

This, too, presents a threshold question for this Court — whether defendant has waived his objection by introducing evidence of two prior DWI convictions himself pursuant to the trial court's in limine ruling on the matter. We conclude that, under the facts of this case, there has been no waiver.

Prior to trial in this case, the State gave notice to defendant of its intent to utilize his two prior DWI convictions pursuant to V.R.E. 404(b). The State asserted that evidence of defendant's prior bad acts was admissible to show defendant's motive to leave the scene of the accident. Defendant filed a motion in limine to bar the use of the prior DWI convictions. After hearing oral argument on the matter, the trial court issued a written order excluding evidence of the convictions from the State's case-in-chief under V.R.E. 403, reasoning that, although relevant to the issue of motive, the evidence was cumulative of statements defendant made to the police after the accident, admitting that he was worried about a DWI charge. Prior to trial, however, the trial court emphasized that its ruling extended only to the case-in-chief. The trial court indicated that if defendant took the stand and testified to an alternate reason for why he left the scene of the accident, the convictions could then come in. Defendant noted his continuing objection to any use of the prior convictions. Following the court's clarification, however, defendant elected to bring in the convictions himself on direct examination, given that he had decided to testify to leaving the area because he could not find what he had hit.

The United States Supreme Court has recently confronted the same issue in a slightly different, but analogous, context to resolve a conflict among the circuits. In *Ohler v. United States*, the government sought to use a defendant's prior felony conviction as impeachment evidence under Fed. R. Evid. 609(a)(1). *Ohler*, 529 U.S. at 755. The trial court ruled in limine that the evidence could come in if the defendant took the stand. *Id.* Defendant elected to take the stand and admitted to the conviction on direct examination. *Id.* The Supreme Court, in a five-to-four decision, concluded that in so doing, the defendant had waived her objection to the trial court's ruling. *Id.* at 760. The majority explained that it was extending its prior holding in *Luce v. United States*, 469 U.S. 38, 43 (1984), where it held that a defendant could not challenge a trial court's in limine ruling on the admissibility of impeachment evidence if the defendant chose not to take the stand. *Ohler*, 529 U.S. at 759. We have come to a similar conclusion as that reached in *Luce*, holding in the Rule 404(b) context that, where a defendant chooses not

to elicit evidence that a trial court has ruled would open the door to prior bad act evidence, that individual has not preserved the issue of admissibility of that evidence for appellate review. *State v. Koveos*, 169 Vt. 62, 70, 732 A.2d 722, 728 (1999). Unlike the Supreme Court, however, we decline to extend the rule in *Koveos* to circumstances such as these.

As the dissenting justices in *Ohler* point out, the rationale in cases such as *Luce* and *Koveos* — that a strategic choice by defendant that prevents the introduction of the contested evidence prevents the creation of an adequate record for review, *Luce*, 469 U.S. at 41-42; *Koveos*, 169 Vt. at 70-71, 732 A.2d at 728 — does not apply to situations such as those presented by this case. *Ohler*, 529 U.S. at 760-61 (Souter, J., dissenting, with whom Stevens, J., Ginsburg, J., and Breyer, J., joined). Here, the trial court made a clear ruling, the evidence was admitted pursuant to that ruling, and the effect of the admission may be examined for harmless error. Without recounting at length the other reasons and authority cited by the dissent in *Ohler* for not finding waiver in circumstances such as these, we adopt its reasoning in concluding that defendant did not waive his objection to the admission of his prior DWI's when he testified to them on direct examination rather than waiting for the State to elicit them.

## B.

Although defendant adequately preserved his objection to the trial court's ruling, we nevertheless conclude that the ruling did not constitute reversible error.

Defendant argues that the trial court erroneously concluded under V.R.E. 403 that, while the danger of unfair prejudice flowing from the prior DWI convictions outweighed their probative value in the State's case-in-chief, the probative value of the prior DWI convictions as *rebuttal evidence* outweighed the danger of unfair prejudice. We review such decisions for an abuse of discretion. See *State v. Gundlah*, 166 Vt. 518, 526, 702 A.2d 52, 56 (1997).

Here, the balance struck by the trial court was within the bounds of discretion. As noted by the court, the DWI evidence was cumulative of other evidence introduced by the prosecution on the issue of motive, and, if that evidence went unrebutted, the DWI evidence would primarily serve to unfairly prejudice defendant. But once defendant testified that he left the scene of the accident because he did not find any victim after looking around, as opposed to because he feared a

DWI charge, the prior convictions assumed more probative weight in relation to their danger of unfair prejudice.

## V.

Defendant's last arguments concern his sentencing in this matter. Defendant contends that the trial court's sentence violates the proportionality clause of the Vermont Constitution and was an abuse of discretion.

We note at the outset that defendant is not challenging the sentencing range for leaving the scene of an accident with death resulting on its face. Cf. *State v. Venman,* 151 Vt. 561, 571-72, 564 A.2d 574, 581 (1989) (challenging maximum penalty of ten years for Medicaid fraud as disproportional to the offense on its face, although defendant's actual sentence totaled only thirty days). Rather, he is challenging his individual sentence as disproportionate relative to sentences meted out previously for the same crime. We have noted that such challenges are not available under the federal constitution and that defendants are limited to challenging a sentence for a particular offense relative only to sentences for crimes of similar or greater culpability. *State v. Bacon,* 167 Vt. 88, 96-98, 702 A.2d 116, 122 (1997). In *Bacon,* we specifically reserved the question of whether such challenges are nevertheless available under our state constitution. *Id.* at 98, 702 A.2d at 123; cf. *State v. Dove,* 163 Vt. 429, 432, 658 A.2d 936, 938 (1995) (concluding that defendant did not provide enough information for this Court to analyze his claim under the Vermont Constitution that his sentence was not proportional to those imposed for the same crime). We need not decide that matter today, however, because even assuming that defendant may bring such a claim under Chapter II, § 39, we cannot say that his sentence is grossly disproportionate to those imposed on others for the same crime.

Defendant provided to this Court, and the trial court, sentencing statistics on LSA, death resulting, spanning a roughly eleven-year period. Our analysis is nevertheless somewhat hampered by the lack of information on the facts giving rise to the previous sentences. Defendant concedes as much. Looking at the numbers only, however, reveals that, while defendant's minimum is six years greater than the next highest minimum sentence imposed, his maximum sentence is only three years greater than the next highest maximum. Defendant's to-serve sentence is also five years less than the maximum penalty established by the Legislature for this offense. And as noted, defendant does not challenge the maximum sentence as

disproportionate to the general offense itself. Thus, we will not reverse defendant's sentence as grossly disproportionate.

Defendant also argues that the trial court abused its discretion in its sentencing in this case. As we have repeatedly stressed, trial courts have broad discretion in sentencing matters. *State v. Bushey,* 147 Vt. 140, 148, 513 A.2d 1177, 1182 (1986); *State v. Neale,* 145 Vt. 423, 435, 491 A.2d 1025, 1033 (1985); see also *Bacon,* 167 Vt. at 96, 702 A.2d at 121 ("Sentencing in Vermont is individualized, with broad discretion afforded the trial court in fashioning an appropriate sentence. . . . The focus is properly on the defendant and the offense committed, not on the characteristics and behavior of unrelated offenders."). In sentencing defendant, the trial court relied on its conclusions that defendant had actual knowledge that he had hit a person on the night in question; that, judging from the damage to defendant's car, it was clear to defendant the nature and extent of the accident; and that defendant nevertheless chose his own self-interest of avoiding a potential DWI charge over helping the individual. As a result, the victim lay on the side of the road for roughly ten hours suffering without medical attention. Furthermore, defendant did not come forward to the police until he heard on the news that there had been a witness to the accident, and came roughly thirty-six hours after the accident. We discern no abuse of discretion warranting reversal.

*Affirmed.*