2007 VT 59A

# State of Vermont v. Robert J. Rideout

[933 A.2d 706]

No. 05-310

Present: **Reiber, C.J., Dooley, Johnson, Skoglund, and Burgess, JJ.**

Opinion Filed July 20, 2007

*Robert Simpson,* Chittenden County State's Attorney, and *Pamela Hall Johnson,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

*Thomas D. Anderson,* United States Attorney, *Carol L. Shea,* Chief, Civil Division, and *Heather E. Ross,* Assistant U.S. Attorney, Burlington, for Amicus Curiae United States of America.

¶ 1. **Reiber, C.J.** Defendant Robert Rideout appeals from his convictions for lewd and lascivious conduct with a child and furnishing drugs to a child, and from the sentences imposed

thereon. Defendant argues that: (1) the trial court erred in failing to enforce a subpoena against a federal officer, (2) a supplemental jury instruction confused the jury and shifted the burden of proof, and (3) the trial court improperly relied on adult convictions obtained when defendant was a minor in finding that he was a habitual criminal. We affirm.

¶ 2. The record reveals the following facts. Defendant was born on May 5, 1963. In 1979, when he was sixteen, defendant was convicted of four felonies: two counts of breaking and entering, 13 V.S.A. § 1202; one count of receiving stolen property, 13 V.S.A. § 2561; and one count of armed robbery, 13 V.S.A. § 608(b). All were adult convictions, although defendant was a minor at the time. In 1986, when he was twenty-three, defendant was convicted of the felony of escape, in violation of 13 V.S.A. § 1501(a)(1), and in 1992 he was convicted of possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) & 924(e)(1)-(2), also a felony. Defendant was imprisoned on this last conviction until the fall of 2003, soon after which the events underlying his current convictions ensued. In the summer of 2004, defendant was charged with two counts of lewd and lascivious conduct with a child, 13 V.S.A. § 2602, and one count of dispensing a regulated drug to a minor, 18 V.S.A. § 4237(a). The three 2004 offenses were all charged under 13 V.S.A. § 11, Vermont's habitual-criminal statute, which provides for enhanced sentences — up to life imprisonment — upon conviction of a fourth or subsequent felony.

¶ 3. The 2004 charges arose from events that occurred when defendant's daughter, then age fifteen, moved in with him after his release from prison. The first lewd-and-lascivious-conduct charge stemmed from an incident, between Thanksgiving and Christmas of 2003, in which daughter awoke to find defendant lying next to her touching her vagina through her underwear. The second lewd-and-lascivious-conduct charge arose from an incident, in April 2004, when daughter awoke to find defendant holding her hand on his penis. The charge of dispensing a regulated drug to a minor was based on defendant's repeated provision of marijuana to his daughter during late 2003 and early 2004. During this period, defendant was on unsupervised release, with conditions, stemming from his 1992 felony firearm-possession conviction. His release conditions required that he submit to regular drug tests, and defendant was never found to be in violation of those

conditions, but the record is silent as to whether he failed any drug test.[1]

¶ 4. On April 25, 2005, the night before trial was to begin, defendant served his federal probation officer with a subpoena to appear at trial on April 27. The following day, the United States Attorney's Office moved to quash the subpoena, on the ground that a federal court rule required service fifteen days in advance of the requested appearance, a specific description of the testimony sought, and a recitation of the reasons the information sought was unavailable from other sources. After much back-and-forth, the trial court neither granted the motion to quash nor attempted to enforce the subpoena.

¶ 5. At trial, defendant's daughter testified that she had lived with her aunt while defendant was serving time on the firearm-possession conviction. Defendant was released from prison and returned to Vermont in the fall of 2003, and daughter moved in with defendant in November 2003, after she had a series of arguments with her aunt. For the first few weeks, defendant and daughter lived in a house with friends. Defendant slept on the couch at first, but later began sleeping in the same bed as daughter. One night, daughter testified, she woke up to find defendant kneeling next to the bed, massaging her vagina with his hand. On two or three other nights, daughter testified, she awoke to find defendant pressed up against her with his hand on his penis.

¶ 6. Defendant and daughter ultimately left the friends' house and lived for a time in a nearby motel. While there, defendant sometimes slept in the same bed with daughter, who testified that she woke up more than once to find defendant "right on the side of [her]" masturbating. When defendant and daughter moved out of the motel, they lived with another family friend for about two months before moving into a one-bedroom apartment of their own in Burlington. Soon after they moved into the apartment, according to daughter's testimony, she awoke one night to find defendant sitting next to her in her bed, holding her hand on his penis. Daughter testified that she moved back in with her aunt the following day, in April 2004.

¶ 7. Soon after daughter moved back in with her aunt, both provided sworn statements to a detective at the Chittenden Unit

---

[1] A person released on conditions may fail a mandatory drug test and yet not be found in violation.

for Special Investigations (CUSI) who testified at trial. Defendant's mother also provided a sworn statement to CUSI. The defense and the prosecution were both properly provided with copies of the sworn statements. Defendant's mother appeared as a defense witness at trial and testified that she had observed defendant and daughter to have a "normal" parent-child relationship, and that she could not recall a conversation with defendant in which he admitted to furnishing marijuana to daughter and to "treating [daughter] like a wife." The prosecution used the CUSI statement to impeach the veracity of this testimony. Daughter testified for the prosecution at trial. On cross-examination, the defense did not refer to any inconsistencies between daughter's CUSI statement and her testimony at trial.

¶ 8. After the close of the evidence, the jury was charged without objection and retired to deliberate. During the course of its deliberations, the jury questioned the court regarding the lewd-and-lascivious conduct charge, requested playback and transcripts of certain testimony, and finally asked the following questions:

> Is there any way we can have information confirming that [daughter's] Court testimony is consistent with the statement made to CUSI?

> Did the Defense find any inconsistencies between [daughter's] Court testimony and the statements made to CUSI? If yes, can we know what?

Following a conference with counsel, detailed more fully below, the court issued a supplemental instruction responding to the questions. The jury subsequently returned guilty verdicts on the two lewd-and-lascivious-conduct charges.

¶ 9. Defendant was ultimately convicted of the two counts of lewd and lascivious conduct with a child and a single count of dispensing a regulated drug to a minor, and was sentenced under the habitual-criminal statute, 13 V.S.A. § 11, to two concurrent sentences of twenty to fifty years. This appeal followed.

## I. The Subpoena

¶ 10. Defendant first asserts that the trial court violated his right, under the Sixth Amendment to the United States Constitution and Chapter I, Article 10 of the Vermont

Constitution, to call witnesses on his own behalf when it refused to enforce his subpoena of the federal probation officer. Defendant averred that the officer would testify that defendant had not been found in violation of probation during a period when a condition of his probation was that he submit to regular drug tests. This testimony, however, was peripherally relevant at best, particularly in light of defendant's admission at trial that he had regularly smoked marijuana during the period in question and had at times provided it to his daughter, and the testimony of an acquaintance to whom defendant had bragged that he knew how to beat the drug tests. Further, the State averred that police officers had found, among defendant's other possessions, a device designed to dispense "clean" urine through a tube to beat the tests, which evidence would have been subject to admission if the officer had testified. In the face of these facts, the officer's testimony would have served no exculpatory purpose, as defendant's counsel expressly recognized, even had it been deemed relevant. At best, it might have supported a conclusion that defendant violated the conditions of his probation, but was not caught.

¶ 11. Further, whether defendant violated his federal probation is a matter of public record, and the information sought from the officer was therefore readily available from other sources. Finally, defendant's subpoena seeking the probation officer's appearance was not timely filed under the federal court's rules. See Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings, adopted by the Judicial Conference of the United States in March 2003, available at http://www.uscourts.gov/courts/regulations.htm.

■ ■ ¶ 12. Compulsory process is mandated, under the Sixth Amendment and Article 10, only where "the witness[] to be called will offer testimony which is competent, relevant and material to the defense." *State v. Kennison*, 149 Vt. 643, 649, 546 A.2d 190, 194 (1987); *State v. Roberts*, 154 Vt. 59, 66 n.3, 574 A.2d 1248, 1250 n.3 (1990) ("The protection provided the accused by the . . . confrontation clause contained in Chapter I, Article 10 is no greater in scope than that afforded by the Sixth Amendment to the federal constitution."). The burden is on defendant to show that the proffered testimony meets these criteria, *Kennison*, 149 Vt. at 649, 546 A.2d at 194, and defendant did not carry that

burden. Accordingly, we find no error and no violation of either the Sixth Amendment or Article 10.[2]

## II. The Supplemental Jury Instruction

¶ 13. Defendant next argues that the trial court erred when it gave an additional instruction in response to questions from the jury after deliberations became deadlocked. Defendant asserts that the supplementary instruction shifted the burden of proof to defendant, thereby depriving him of his right to a fair trial. The instruction to which defendant objects came in response to a written question posed by the jury after more than six hours of deliberations. The jury posed two questions pertinent to this appeal: (1) "Is there any way we can have information confirming that [daughter's] Court testimony is consistent with the statement made to CUSI?" and (2) "Did the Defense find any inconsistencies between [daughter's] Court testimony and the statements made to CUSI? If yes, can we know what?" The court proposed to respond to the jury as follows:

> (1) all prior statements of . . . all witnesses are given to the . . . Defense by the State. And No. 2 . . . it is permissible for the [Defense] to impeach[,] that is to call into question[,] . . . the courtroom testimony of witnesses if the witness made any prior inconsistent statements on other occasions.

During the ensuing colloquy, at which counsel for the State and for defendant were present, the defense objected, arguing that the court's proposed instruction might give rise to an inappropriate inference by the jury: namely, that the defense's decision not to confront daughter with prior inconsistent statements represented a concession by the defense that there either were no such inconsistencies or that they were unimportant. The defense contended that the instruction should reflect the defense's tactical decision not to confront daughter — whose testimony was already fraught with emotion — with inconsistencies because doing so might have caused the jury to view the defense as overly confrontational.

---

[2] Because we conclude that defendant failed to show that the federal officer's testimony would be competent, relevant, and material to his defense, we need not consider the question of whether or how the trial court could have enforced the subpoena had such a showing been made.

¶ 14. The court then proposed the following amended instruction:

> (1) All prior statements of witnesses known to the State . . . are disclosed to the Defense prior to trial. (2) If there are any inconsistencies between the Court testimony of a witness and any prior statement, the Defense may question or cross examine the witness about these *but need not do so.*

(Emphasis added.) The defense again objected, noting that the defense was concerned that because it tactically chose not to impeach daughter with the prior statements in order not to upset her, the jury "may draw the erroneous conclusion that there were [no] contradictions." The jury was ultimately instructed as follows:

> First of all, . . . the evidence is closed and we can't add anything at this point but there are some principles . . . that you should be aware of and they are these. . . . [A]ll prior statements of witnesses whether written or verbal that are known to the State . . . must be disclosed to the Defense . . . . The second principle is . . . this. If there are any inconsistencies between the Court testimony of a witness and what the witness has said or written on any prior occasion . . . the Defense may question or cross-examine the witness about it while he or she is on the witness stand *but is not required to do so. And might not for practical reasons* but those are the two principles that you should be aware of.

(Emphasis added.) Defendant did not renew his objection to this instruction after it was given.

■ ¶ 15. Although defendant appears to concede that he did not preserve this objection for appeal and that our review should therefore be limited to plain error, we disagree. We do not require that objections made before the supplemental instruction is given be renewed thereafter in order to preserve those objections for appellate review. *State v. Keiser*, 174 Vt. 87, 91, 807 A.2d 378, 383 (2002) ("To require counsel to again object after a single supplemental instruction in order to preserve the issue is ordinarily unnecessary given the narrow scope of the instructions."); Reporter's Notes, V.R.Cr.P. 30 ("The rule does not apply to comment upon the evidence or to such further instructions as the jury may

require after it has retired, whether on the merits or because of deadlock."). See also *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992) (noting that the purpose of requiring renewed objections after the jury is charged is, in part, to enable this Court to better determine precisely which of the objections raised at the precharge conference counsel intends to preserve for appeal). Here, the supplemental instruction was slightly more complex than the instruction in *Keiser*, but was not so extensive as to require a renewed objection to clearly preserve discrete issues for appeal.

¶ 16. We further require that the pre-instruction objection be "stated with specificity" in order that the trial court will have an adequate opportunity to respond to the alleged error. *Keiser*, 174 Vt. at 91, 807 A.2d at 382. Defendant's counsel did so here, and the trial court amended the instruction twice in response. The objection is adequately preserved for this appeal. We conclude, however, that the claim of error fails.

¶ 17. We review jury instructions as a whole to ensure that they "accurately state the law." *State v. Baird*, 2006 VT 86, ¶ 30, 180 Vt. 243, 908 A.2d 475 (internal quotations omitted). Within the parameters of the law, the trial court "may exercise its discretion in the wording of the jury charge; a defendant is not entitled to have specific language included." *Id.* (internal quotations omitted). At trial, defendant expressed a concern, in light of the first proposed supplemental instruction, that the jury might not be made aware that the defense might have chosen, for strategic reasons, not to cross-examine or impeach defendant's daughter with prior inconsistent statements. The court modified the instruction to address that concern, and ultimately instructed the jury that, while the defense was permitted to impeach witnesses with prior inconsistent statements, it was "not required to do so" and "might not for practical reasons."[3] This wording breathes the

---

[3] Because the court expressly instructed the jury that defendant was not required to impeach daughter, and might not do so "for practical reasons," we disagree with defendant's assertion that 13 V.S.A. § 6601 (or the constitutional mandate it implements) applies here. Section 6601 provides only that "the failure of [a defendant] to testify shall not be a matter of comment to the jury by either the court or the prosecutor and shall not be considered by the jury as evidence against him." Here, defendant *did* testify, and the court's instruction was merely a neutral statement of the law in response to a jury question about the defense's decision not to cross-examine daughter. We do not now foreclose the possibility, of course,

correct spirit of the law, particularly in light of the court's earlier instructions. Those instructions explicitly stated that the "burden is always upon the State to prove the accused is guilty by proving beyond a reasonable doubt every essential element of the crime charged." The jury was also instructed that defendant was to be presumed innocent until proven guilty, and was not required to call any witness at all, but could instead "rely entirely on the presumption that he is innocent until proven guilty." Because we presume that the jury will follow all of the instructions given by the court, *State v. Green*, 2006 VT 64, ¶ 10, 180 Vt. 544, 904 A.2d 87 (mem.), the supplemental instruction did not deprive defendant of his right to a fair trial and was not error.

## III. The Sentence

¶ 18. Finally, defendant argues that the trial court erred in sentencing him as a habitual criminal under 13 V.S.A. § 11, because he was sixteen years old when four of his six predicate felonies occurred and the resultant sentences therefore assertedly offend the Eighth Amendment prohibition against cruel and unusual punishment. If defendant's four felony convictions from 1979 had not been counted, he would have had only two prior felonies, and could not have been sentenced as a habitual criminal. The State contends, first, that defendant failed to raise the issue below, thereby waiving appellate review. Alternatively, the State argues that defendant's claim of error, even if preserved for our review, must fail because defendant was tried and convicted as an adult in criminal court for the 1979 felonies, despite his minority. Although we disagree with the State as to the preservation issue, we agree that the trial court did not err in counting the defendant's convictions in adult court toward habitual-criminal status.

¶ 19. As a general rule, we will not consider issues that were not raised with specificity and clarity at trial. *State v. Ovitt*, 2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d 314 (mem.). An issue is not preserved for appeal unless it has been raised at trial with sufficient specificity to afford the trial court "an opportunity to fully develop the relevant facts and to reach considered legal conclusions." *Id.* Issues not preserved are reviewed for plain error. *State v. Percy*, 158 Vt. 410, 418, 612 A.2d 1119, 1125 (1992).

that § 6601 might bar a supplemental instruction that did not contain the curative language present in the instruction in this case.

¶ 20. Defendant did not brief the claim below, but did twice orally advise the trial court that using the 1979 convictions as predicates for habitual-criminal sentence enhancement was problematic. Both objections were brief and cited no legal authority for defendant's argument, which he stated was one "of first impression." While we take seriously the concerns underlying our rule against considering issues not raised with specificity and clarity at trial, defendant's oral objections here were sufficient to allow the trial court to consider and rule on this purely legal issue. Our review is not compromised by any claimed infirmity in the trial court's development of the relevant facts, which are undisputed. Accordingly, we will consider the claimed error. For the reasons articulated below, however, we conclude that the trial court committed no error in counting, for purposes of 13 V.S.A. § 11, the felonies of which defendant was convicted in adult court when he was a minor.

¶ 21. A brief review of Vermont's juvenile justice system is a useful preface to our analysis. The Legislature established juvenile courts, and limited their jurisdiction, by statute. 1967, No. 304 (Adj. Sess.); 33 V.S.A. §§ 5501-5561. Juvenile defendants may be tried either in adult criminal court or in juvenile court, depending on their age, the character of the crime, and the discretion of the prosecutor or the courts. In particular, criminal proceedings against defendants between the ages of sixteen and eighteen may be transferred to juvenile court from the criminal courts at the discretion of the criminal courts, and such defendants have no absolute right to have their cases transferred to juvenile court. *Id.* § 5505(b); *State v. Smail*, 151 Vt. 340, 341, 560 A.2d 955, 955 (1989); cf. *State v. Buelow*, 155 Vt. 537, 544-45, 587 A.2d 948, 953 (1990) (transfer of fourteen-year old's murder trial is committed to the discretion of the trial court).

¶ 22. Defendant does not claim that he was not properly before the adult criminal court in 1979, however. He argues only that, simply because he was a minor at the time of his four 1979 convictions, they cannot be counted as prior felonies under 13 V.S.A. § 11, because doing so resulted in a sentence so severe as to be cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[4] We disagree.

---

[4] The Eighth Amendment declares: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const.

¶ 23. Our analysis begins with the plain language of the statutes. The habitual-criminal statute, 13 V.S.A. § 11, provides as follows:

> A person who, after having been three times convicted within this state of felonies or attempts to commit felonies, or under the law of any other state, government or country, of crimes which, if committed within this state, would be felonious, commits a felony other than murder within this state, may be sentenced upon conviction of such fourth or subsequent offense to imprisonment up to and including life.

In Vermont, a felony is *"any offense* whose maximum term of imprisonment is more than two years, for life or which may be punished by death." 13 V.S.A. § 1 (emphasis added). As noted above, in Vermont sixteen-year-old defendants may be convicted of felonies in adult court, as defendant was in 1979. Neither 13 V.S.A. § 1 nor § 11 distinguishes between convictions of minors and convictions of adults, although the analogous habitual-offender statutes in some other states do make such distinctions. See, e.g., Cal. Penal Code § 667(d)(3) (defining the conditions under which even a juvenile adjudication may be later considered a predicate offense for habitual-criminal sentence enhancement); Fla. Stat. § 775.084(1)(a)-(d) (allowing use of any felony for a finding that a defendant is a "habitual felony offender" or "habitual violent felony offender," but requiring that the predicate felonies for a finding of "three-time violent felony offender" and "violent career criminal" status have been committed as an adult); Tex. Fam. Code Ann. § 51.13(d) (juvenile adjudication for behavior that would be a felony if committed by an adult is counted towards habitual-offender status). The language of our statutes makes plain that the Legislature intended that felony convictions of minor defendants could, in the trial court's discretion, be counted towards habitual-criminal status under 13 V.S.A. § 11. The question remains whether § 11 is constitutional as applied to defendant here.[5]

---

amend. VIII. The Amendment is applicable to the states by operation of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 667 (1962).

[5] Defendant does not contend that recidivist sentencing is constitutionally infirm in all cases, and does not contest the use of his felony convictions as an adult for this purpose. Cf. *Spencer v. Texas*, 385 U.S. 554, 560 (1967) (upholding, against several constitutional attacks, Texas' recidivist sentencing statute).

¶ 24. The federal courts that have considered the analogous question under the federal sentencing guidelines[6] have uniformly held that convictions of minors in adult court may be used for sentence enhancement up to and including life imprisonment. See, e.g., *United States v. Moorer*, 383 F.3d 164, 167 (3d Cir. 2004); *United States v. McNeil*, 90 F.3d 298, 299-300 (8th Cir. 1996); *United States v. Bacon*, 94 F.3d 158, 161 n.2 (4th Cir. 1996); *United States v. Muhammad*, 948 F.2d 1449, 1459 (6th Cir. 1991) ("[Defendant] merely claims that the fact that he was seventeen at the time of his [prior adult] conviction should bar its use in calculating his career offender status. This novel argument is without precedent."); *United States v. Unger*, 915 F.2d 759, 764 (1st Cir. 1990), *cert. denied*, 498 U.S. 1104 (1991). The federal guidelines, unlike the Vermont statutes in question here, explicitly include adult convictions of juveniles as predicate offenses for enhanced sentencing, however. U.S. Sentencing Guideline § 4A1.2(d)(1). The federal cases therefore do not end our inquiry.

¶ 25. State courts that have considered the question, under a variety of statutory schemes, have also consistently held that felony convictions of minors obtained in criminal court may be later used for sentence enhancement. See, e.g., *Sandoval v. People* 426 P.2d 968, 969-70 (Colo. 1967) (prior burglary conviction, as minor, resulting in sentence served in state reformatory, was felony for purposes of sentencing as a habitual criminal); *Whitfield v. Singletary*, 730 So. 2d 314, 315 (Fla. Dist. Ct. App. 1999) (per curiam) ("It is true that the defendant was sentenced as a youthful offender for [his prior felony robbery conviction in criminal court], but that does not preclude its consideration as a predicate offense."); *Lazenby v. State*, 470 S.E.2d 526, 528-29 (Ga. Ct. App. 1996) (prior conviction, as a minor, of felony robbery, was properly considered as supporting recidivist sentencing upon sub-

---

[6] We note that the mandatory application of the United States Sentencing Guidelines was held unconstitutional in *United States v. Booker*, 543 U.S. 220 (2005). *Booker*, however, held only that sentence-enhancing facts other than prior convictions must be found by a jury. *Id* at 244. *Booker* does not undercut the logic of the quoted language from *Moorer*, *McNeil*, *Bacon*, and *Muhammad*, although it may, as noted *infra*, ¶ 26, impact the ability of states to use juvenile adjudications obtained without particular procedural protections for sentence enhancement. That question, of course, is not before us today. Defendant's prior convictions were all obtained in adult proceedings, and Vermont's habitual-criminal statute does not allow sentence enhancement for prior juvenile adjudications obtained without a jury.

sequent adult conviction); *State v. Moore*, 596 S.W.2d 841, 845 (Tenn. Crim. App. 1980) (prior conviction, as a minor, was properly considered for sentencing as a habitual criminal).

¶ 26. Many courts have held that juvenile adjudications against minors may not be counted towards habitual-offender status upon a subsequent felony conviction as an adult. See, e.g., *Ex parte Thomas*, 435 So. 2d 1324, 1326 (Ala. 1982) (holding that a "youthful offender determination . . . may not be considered a prior felony conviction, as contemplated by the Habitual Offender Act, so as to bring the defendant within the purview of the higher sentence categories of that Act"); *Rogers v. State*, 538 S.W.2d 300, 302-03 (Ark. 1976) (holding that a prior adjudication of delinquency under the Federal Juvenile Delinquency Act is not a felony conviction and cannot be counted towards habitual-offender sentencing); *People v. West*, 201 Cal. Rptr. 63, 68 (Ct. App. 1984) (same; noting the "numerous procedural differences between a juvenile proceeding and a criminal proceeding, most notably in the area of due process (e.g., right to a jury trial)"); *People v. Figueroa*, 404 N.Y.S.2d 348, 349 (App. Div. 1978) (mem.) (noting, in dicta, that the defendant's prior youthful-offender adjudication was not a "judgment of conviction" for purposes of sentence enhancement; reversing on other grounds). These courts and others have premised their holdings on the procedural protections absent from juvenile proceedings.[7]

¶ 27. We need not venture into the thicket of constitutional issues[8] raised by sentence enhancement based on juvenile adjudications obtained without a jury, however. Defendant pleaded guilty in adult court to his 1979 offenses. Defendant did not, so far as the record reflects, either move for transfer to juvenile court or appeal from the venue of his 1979 convictions, which he could have done. 1967, No. 304 (Adj. Sess.), § 5(b) (criminal court "may" transfer proceeding against sixteen- to eighteen-year-old

---

[7] Juvenile proceedings, though they are subject to certain due-process requirements, may dispense with others, particularly the right to a jury. *Kent v. United States*, 383 U.S. 541, 545 n.3 (1966); *McKeiver v. Pennsylvania*, 403 U.S. 528, 545-50 (1971) (identifying thirteen reasons why the jury-trial requirement should not be imposed on the juvenile process).

[8] See generally B. Thill, *Prior "Convictions" Under Apprendi: Why Juvenile Adjudications May Not be Used to Increase an Offender's Sentence Exposure if They Have Not First Been Proven to a Jury Beyond a Reasonable Doubt*, 87 Marq. L. Rev. 573 (2004).

defendant to juvenile court); *State v. Powers*, 136 Vt. 167, 169-70, 385 A.2d 1067, 1068 (1978) (minor defendant, tried in adult criminal court, moved to transfer case to juvenile court and then appealed denial of motion under former 33 V.S.A. § 635, predecessor to 33 V.S.A. § 5505). Although the statute does not mandate enhanced penalties for fourth and subsequent offenses, it does vest the district court with discretion to impose up to life imprisonment in such cases. *State v. Angelucci*, 137 Vt. 272, 289, 405 A.2d 33, 42 (1979); 13 V.S.A. § 11 (habitual offender *"may* be sentenced upon conviction of such fourth or subsequent offense to imprisonment up to and including life"). In light of the foregoing authorities, we cannot say that the district court abused its discretion in imposing an enhanced sentence on defendant based on his 1979 convictions.

¶ 28. We turn now to consider whether defendant's sentence, as a habitual criminal, amounts to cruel and unusual punishment proscribed by the Eighth Amendment despite being permissible under 13 V.S.A. § 11. The Eighth Amendment embodies only a " 'narrow proportionality principle' " in noncapital cases. *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). As the United States Supreme Court has acknowledged, its "precedents in this area have not been a model of clarity," *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003), but "one governing legal principle emerges as 'clearly established' . . . : A gross disproportionality principle is applicable to sentences for terms of years." *Id.*; see also *State v. Alexander*, 2005 VT 25, ¶ 9, 178 Vt. 482, 871 A.2d 972 (mem.) (noting that sentences to terms of years are constitutional unless "clearly out of all just proportion to the offense") (internal quotations omitted). The *Lockyer* Court noted that the Eighth Amendment requires striking down sentences to terms of years only in " 'exceedingly rare' " and " 'extreme' " cases. *Id.* at 73 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment)). Although the "precise contours of [the proportionality principle] are unclear," the sentence in the instant case does not approach them.

¶ 29. The Eighth Amendment does not prohibit a life sentence with the possibility of parole after twelve years for a third-time offender whose offenses were all minor, nonviolent property crimes. *Rummel v. Estelle*, 445 U.S. 263, 284-85 (1980). The

128

triggering offense in *Rummel* was a conviction for felony theft: "obtaining $120.75 by false pretenses." *Id.* at 266. The *Rummel* defendant's two prior convictions were for "fraudulent use of a credit card to obtain $80 worth of goods or services" and for "passing a forged check in the amount of $28.36." *Id.* at 265. Nor does the Eighth Amendment bar a sentence of twenty-five years to life for a recidivist whose triggering conviction was a "wobbler" that could have been sentenced as either a misdemeanor or a felony under California law. *Ewing*, 538 U.S. at 30 (noting that the sentence, though a "long one," nonetheless "reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated").

¶ 30. In only one case has the United State Supreme Court struck down a recidivist's sentence of imprisonment on cruel-and-unusual-punishment grounds. *Solem v. Helm*, 463 U.S. 277, 303 (1983). But the defendant in *Solem*, unlike defendant in the instant case, was a nonviolent offender and was sentenced to life without parole, the most severe sentence available in South Dakota at the time. Helm's sentence was based on a final offense of uttering a bad check for $100, and was enhanced on the basis of six prior convictions: three convictions for third-degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for third-offense driving while intoxicated. The Court's holding in *Solem* was explicitly premised on the nonviolent, "minor" character of the defendant's felonies. *Id.* at 296-97. Further, the Court relied on the fact that Helm could only have received the sentence that he did in one other state, *id.* at 299-300, and on the unavailability of parole, *id.* at 297, 300. In evaluating Helm's sentence, the *Solem* Court considered three factors: (1) the gravity of the offense and the harshness of the penalty; (2) sentences imposed for other offenses in the same jurisdiction; and (3) sentences imposed for the same offense in other jurisdictions. *Id.* at 290-92. Applying these factors to the instant case reveals no constitutional infirmity in defendant's sentence.

¶ 31. First, the harshness of defendant's penalty was not out of all proportion with the gravity of his offense. Defendant's triggering convictions were for lewd and lascivious conduct with a child age fifteen which, though not defined by statute as "felony crime[s] of violence," are crimes against the person and so are

certainly distinct from the mere property offenses in *Solem*. Cf. 13 V.S.A. § 11a(d)(13) (defining, as a felony crime of violence, lewd and lascivious conduct with a child under thirteen by an actor over eighteen). We recognize, of course, that any assessment of the relative seriousness of criminal offenses is fundamentally speculative. See *Rummel*, 445 U.S. at 282 n.27 ("[T]he 'seriousness' of an offense or pattern of offenses in modern society is not a line, but a plane. Once the death penalty and other punishments different in kind from fine or imprisonment have been put to one side, there remains little in the way of objective standards . . . ."). Nonetheless, it is safe to say that defendant's conduct is more serious than that of the defendant in *Rummel*, whose life sentence with possibility of parole was upheld. As defendant's penalty here is also less harsh than the *Rummel* defendant's, this first *Solem* factor lends little support to his claim of error.

¶ 32. The second *Solem* factor — the sentences imposed for other crimes in the same jurisdiction — also undercuts defendant's position. Under the habitual-criminal statute, *any* fourth or subsequent felony is punishable by up to life imprisonment. A felony is any crime punishable by a maximum term of more than two years. 13 V.S.A. § 1. Therefore, under the habitual-criminal statute, defendant might have been sentenced to any term up to and including life for offenses such as intentionally damaging property valued at more than $1,000, *id.* § 3701(a), or breaking or removing a flag holder on a grave stone, *id.* § 3766(a) (Cum. Supp. 2006). The Legislature, by operation of 13 V.S.A. § 11, has authorized long prison terms for recidivist felons of all stripes, and defendant's triggering felonies are no less serious — and definitely not egregiously so — than many of the other felonies for which the same penalty might have been imposed.

¶ 33. As to the third *Solem* factor, no argument has been advanced that Vermont stands alone among the states in authorizing a twenty-to-fifty-year sentence for an offender with defendant's record, and a review of other states' practices reveals that such an argument would, in any event, be unfounded. See, e.g., Fla. Stat. §§ 775.084, 800.04(5)(c)(2) (defining "lewd and lascivious molestation" of a child as a second-degree felony and providing for a sentence of not more than thirty years per offense, with no possibility of release for ten years, where the offender is a "habitual violent felony offender," which defendant would be under Fla. Stat. § 775.084(1)(b)); *State v. Gain*, 90 P.3d 920 (Idaho Ct.

App. 2004) (sentence of twenty-five years — with no opportunity for parole until twelve served — for first-offense lewd and lascivious conduct with child, does not offend Eighth Amendment). Indeed, in at least one state, defendant's lewd-and-lascivious-conduct offenses, standing alone, would expose him to a life sentence. Idaho Code Ann. § 18-1508 (allowing life sentence for first-offense lewd and lascivious conduct). The third *Solem* factor, accordingly, does not buttress defendant's argument.

¶ 34. Defendant also cites *Roper v. Simmons*, 543 U.S. 551 (2005) — in which the Supreme Court of the United States held unconstitutional a Missouri statute authorizing the death penalty for persons under eighteen years of age — for the proposition that his sentence in this case violates the Eighth and Fourteenth Amendments. But *Roper* cannot bear the weight defendant would place on it; the instant case involves imprisonment, not death, a distinction critical to *Roper*'s reasoning. See 543 U.S. at 568-75; cf. *Rummel*, 445 U.S. at 272 ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."). The *Roper* Court also took pains to review changing capital-punishment practices nationwide before concluding that "evolving standards of decency" compelled the conclusion that minor defendants could no longer constitutionally be sentenced to death. 543 U.S. at 564-68. There is no indication that defendant's sentence enhancement runs afoul of any such consensus.

¶ 35. Further, the defendant in *Roper* was sentenced to death solely for an offense committed while he was a minor. *Id.* at 556. Defendant here is an adult now and was an adult when he committed both his most recent offenses and two of the other predicate felonies relied on by the trial court. The mere fact that his sentence for crimes committed as an adult has been affected by adult convictions obtained while he was a minor does not by itself bring his sentence within *Roper*'s narrow protective ambit. A defendant sentenced as a recidivist or habitual criminal is not punished again for his prior crimes, but rather receives an enhanced sentence for the present offense. See, e.g., *Witte v. United States*, 515 U.S. 389, 400 (1995) ("In repeatedly upholding . . . recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment . . . [is] a stiffened penalty *for the latest crime*, which is considered to be an aggravated offense because a repetitive one.") (internal quotation

marks omitted, emphasis added); *People v. Walker*, 623 N.E.2d 1, 5 (N.Y. 1993) ("When a defendant is sentenced as a [repeat] offender, the initial felony case is not reopened, nor is defendant punished *again* for his initial crime.").

¶ 36. *Roper* was also premised on the importance of giving minor offenders an opportunity to mend their ways. 543 U.S. at 570 ("From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed."). In the instant case, that possibility has largely gone by the board and is not, in any event, entirely foreclosed by defendant's sentence to a term of years, as it would be by a death sentence. Defendant's transgressions have continued throughout his adult life, and the Legislature is within constitutional limits in allowing him to be punished more severely for his recent crimes in light of that record. This is in sharp contrast to the minor offender in *Roper*, who had no prior convictions and was sentenced to death for a single act, heinous though that act was. *Id.* at 558. For these reasons — and others we need not belabor here — *Roper* is inapposite.

¶ 37. Defendant also cites the former 33 V.S.A. § 5538(e) (recently amended, see 2005, No. 198 (Adj. Sess.), § 2, and now 33 V.S.A. § 5538(g) (Cum. Supp. 2006)), which governs the sealing of records of court proceedings in which a minor is tried and convicted as an adult. Defendant argues that "convictions that can be expunged, upon application, from a defendant's record because they were obtained when he was a juvenile, should not be the basis for enhancing his exposure, now as an adult, to a potential life sentence." This argument, too, is unavailing.

¶ 38. The version of the expunction statute operative at the time of defendant's sentencing provided as follows:

> On application of a person who has pleaded guilty to or has been convicted of the commission of a crime committed under the laws of this state prior to attaining the age of majority, or on the motion of the court having jurisdiction over such a person, the files and records may be sealed after proceedings in conformity with and subject to the limitations of subsections (a), (b), (c) and (d) of this section.

33 V.S.A. § 5538(e) (2001). First, defendant does not claim to have applied to seal the records of the convictions whose use he now challenges. Second, the limitations in the other listed subsections include the requirement, in subsection (a), that the applicant for sealing not have since been convicted of "a felony or misdemeanor involving moral turpitude." *Id.* § 5538(a). Defendant's convictions for lewd and lascivious conduct with a child fit squarely under the "turpitude" umbrella, and the records from his 1979 convictions would therefore not have been sealed, even had he applied. Defendant's assertion that the record of his 1979 convictions "could be expunged" is inaccurate and does not support his position.[9]

¶ 39. For the foregoing reasons, we find no error in the trial court's conclusion that defendant's felony convictions, as a minor, in adult criminal court, may be counted towards habitual-criminal status under 13 V.S.A. § 11. As we also find defendant's other claims of error unavailing, the judgment below must stand.

*Affirmed.*

---

[9] The recent amendments to § 5538 also do not advance defendant's cause. The revised statutory scheme generally "favors the sealing of juvenile records if, after a period of time, the juvenile does not commit a serious crime or offense, while allowing a judge the discretion to deny the sealing if he or she believes the juvenile has not been rehabilitated." 2005, No. 198 (Adj. Sess), § 1(3). More specifically, the former subsection (e), now subsection (g), mandates sealing of records of adult convictions on application of the convict, but only if several findings are made. *Id.* § 2. First, the convict must apply to have the records sealed, which defendant does not claim to have done. Even if he had so applied, his application would have failed due to the further requirement that the applicant not have since been convicted of any "listed crime" as defined in 13 V.S.A. § 5301. Lewd and lascivious conduct with a minor is a listed crime. 13 V.S.A. § 5301(7)(I).